2015 ND 125

**In the Matter of the ESTATE OF Arline H. HOGEN, Deceased,**

**Steven C. Hogen, Petitioner and Appellee and Cross–Appellant**

v.

**Rodney HOGEN, Respondent and Appellant and Cross–Appellee.**

No. 20140119.

Supreme Court of North Dakota.

May 27, 2015.

Rehearing Denied July 1, 2015.

the Barnes County conservation reserve program land on the cash rent for the Barnes County land and on the average per acre cost of production for the Cass County Land.

Jonathan T. Garaas, Fargo, N.D., for respondent and appellant and cross-appellee.

Michael D. Nelson, West Fargo, N.D., for petitioner and appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Rodney Hogen appeals and Steven Hogen, as personal representative of the estate of Arline Hogen, cross-appeals from an order approving a final accounting and settlement in the probate of the estate of Arline Hogen. We hold the district court did not err in concluding the devolution of real property to Rodney Hogen was subject to the personal representative's power during administration of the estate to seek a retainer for any noncontingent indebtedness Rodney Hogen owed Arline Hogen or the estate. We conclude the court erred to the extent it calculated the estate's retainer based on Barnes County conservation reserve program land, but we otherwise conclude the court did not clearly err in determining the estate's retainer against Rodney Hogen's interest in the estate. We further conclude the court did not abuse its discretion in awarding personal representative fees and attorney fees. We affirm in part, reverse in part, and we remand for recalculation of the retainer against Rodney Hogen's interest in the estate after considering the effect of

I

[¶ 2] Curtiss and Arline Hogen were husband and wife, and they jointly owned about 737 acres of farmland in Barnes and Cass Counties. In the late 1960s, Rodney Hogen began farming the land with his father, Curtiss Hogen. When Curtiss Hogen died in 1993, his will distributed his undivided half interest in the farmland into the Curtiss Hogen Trust B, with Arline Hogen designated as the recipient of the net income from the Trust. Curtiss Hogen's will appointed his sons, Steven and Rodney Hogen, as co-trustees of the Trust and authorized the Trust to continue the farming operation. Rodney Hogen continued farming the land under a cash rent and crop-share rental arrangement with the Trust and with Arline Hogen, the owner of the other undivided half interest in the farmland. An inventory of Arline Hogen's estate reflected the Barnes County land consisted of about 308 tillable acres and 14 non-tillable acres and the Cass County land consisted of about 393 tillable acres and about 22 non-tillable acres. Rodney Hogen initially cash rented the Barnes County land for $30 per acre and farmed the Cass County land as a crop-share tenant. According to Rodney Hogen, under the terms of the crop-share agreement for the Cass County land, he received two-thirds of the crop-share proceeds and was responsible for two-thirds of the input costs and Arline Hogen and the Trust each received one-sixth of the crop-share proceeds and were each responsible for one-sixth of the input costs. Rodney Hogen claimed he made yearly reconciliations of the cash rent and crop-

share proceeds due to Arline Hogen against the input costs she owed for the Cass County land.

[¶ 3] When Arline Hogen died on March 23, 2007, she was survived by her two sons, Steven and Rodney Hogen, and her 1994 will equally devised all her property to them. In April 2007, Steven Hogen applied for informal probate of Arline Hogen's will and appointment as personal representative of her estate, and he was appointed personal representative of her estate. According to Steven Hogen, he subsequently determined Rodney Hogen had not made certain cash rent and crop-share payments to Arline Hogen before her death in March 2007, and he claimed her estate was authorized to offset the amount of Rodney Hogen's indebtedness to her against Rodney Hogen's interest in her estate.

[¶ 4] On March 19, 2010, Steven Hogen, as personal representative of the estate, petitioned for approval of a final accounting, for a determination of Arline Hogen's testacy status, and to formally close the probate of her estate. The personal representative sought a retainer against Rodney Hogen's share of the estate under N.D.C.C. § 30.1–20–03, claiming Rodney Hogen owed the estate about $98,000 for cash rent, crop-share payments, and conservation reserve program payments for crop years 2003 through 2009.

[¶ 5] Rodney Hogen opposed the personal representative's petition, denying any liability for an offset against his interest in the estate and seeking removal of Steven Hogen as personal representative of the estate and removal of the estate's counsel. Rodney Hogen also sought appointment as successor personal representative and supervised administration of the estate. After a hearing, the district court ordered the parties to proceed under N.D.C.C. § 30.1–20–03 to determine the amount of retainer or offset, if any, against Rodney Hogen's interest in the estate.

[¶ 6] Rodney Hogen answered the petition, asserting any debt he owed the estate was a contingent indebtedness under N.D.C.C. § 30.1–20–03. He denied "the estate [was] in a condition to be closed," and claimed he was not indebted to the estate for any unpaid rents and expenses. Rodney Hogen thereafter moved for summary judgment on the personal representative's claim for a retainer, asserting any debts he owed the estate were barred by statutes of limitations in N.D.C.C. §§ 28–01–26 or 30.1–19–03. He also claimed he and Steven Hogen were co-owners of the cash rent and crop-share proceeds immediately after Arline Hogen's death and those funds were not needed for administration of her estate. The district court ruled the personal representative's claims for cash rent and crop-share proceeds before March 19, 2004, were barred by the six-year statute of limitations in N.D.C.C. § 28–01–16 and granted Rodney Hogen summary judgment dismissing the estate's claim for a retainer for the 2003 crop year. The court denied the remainder of Rodney Hogen's motion for summary judgment.

[¶ 7] After further proceedings, the personal representative filed an amended petition for approval of a final accounting and formal settlement of the estate in February 2013, seeking a retainer against Rodney Hogen's share of the estate for cash rent, crop-share proceeds, and conservation reserve program payments for crop years 2004 through 2012. After a protracted bench trial, the district court determined that the estate was not entitled to an offset against Rodney Hogen's share of the estate for cash rent or crop-share proceeds before Arline Hogen's death in March 2007, but that Rodney Hogen owed the estate $95,544.44 for cash rent and

crop-share proceeds for crop years 2007 through 2013. The court further determined Rodney Hogen owed the estate for a share of conservation reserve program payments and also awarded the estate interest, which resulted in a determination that Rodney Hogen owed the estate a total of $123,387.44 to be offset against his interest in the estate. The court also approved Steven Hogen's request for the estate to pay $27,500 in personal representative fees and $333,272.23 in attorney fees, costs, and expert witness fees.

## II

### A

[¶ 8] Rodney Hogen argues the district court erred in authorizing the personal representative to pursue a retainer in this probate proceeding against his devised real property for claimed post-death cash rent and crop-share proceeds under N.D.C.C. § 30.1–20–03. He claims his share of Arline Hogen's real property vested in him immediately upon her death under N.D.C.C. § 30.1–12–01 and the common law rule stated in *Stanton v. Stanton,* 134 Neb. 660, 279 N.W. 336 (1938). He asserts "North Dakota's present statutory scheme seems to follow the general common law rule ... as to devised real property" to the effect that when a decedent dies testate, a debt owed the decedent, who failed to mention the debt in the will, is not subject to the right of retainer and the debt must be collected in a separate legal action.

[¶ 9] In *Stanton,* 279 N.W. at 341, the Nebraska Supreme Court described the common law for devolution of a decedent's property:

It must be remembered that at common law all of the property of a deceased person passed direct to his heirs upon his death, free from any debts due the deceased from the heirs. Most states, including this state, have enacted statutes providing that personal property passes to the executor or administrator upon the death of the owner. Such statutes are clearly in derogation of the common law and it is only because of them that an executor or administrator comes into possession of the personalty and may retain from the interest of a legatee or distributee the amount owing to the deceased. In this state the legislature has not changed the common law in so far as the descent of real estate is concerned. The result is that real estate descends to the devisees of a deceased free from the debts of such devisee subject only to conditions imposed by statute. Our statutes, hereinbefore cited, do not provide for advancements in testate estates, the will of testator presumably being the testator's last expression of his intention. There being nothing in the will purporting to charge the devisee with the indebtedness owing the testator, it evinces an intention to treat the notes as a simple indebtedness and to leave their enforcement to the ordinary legal methods provided by law. No charge against the land was created by the testator in the case at bar. Under such circumstances, the only remedy of the administrator or executor is to invoke the ordinary legal remedies to enforce payment. The adoption of any other rule would be equivalent to a rewriting of testator's will by us or tantamount to the passage of a statute by the court in a field where the legislature has refused to act.

[¶ 10] In *Stenson v. H.S. Halvorson Co.,* 28 N.D. 151, 156, 147 N.W. 800, 801 (1913) (citing 1905 R.C. § 5186), a case involving a decedent without a will, this Court considered the effect of a statutory provision stating that both real and personal property of an intestate decedent

passed to the decedent's heirs subject to administration. This Court sustained a right of retainer against an heir of the intestate decedent and held the heir's indebtedness constituted part of the estate's assets for which the heir should account before receiving anything out of the estate's other assets. 28 N.D. at 159–62, 147 N.W. at 802–04.

[¶ 11] Both *Stanton* and *Stenson* recognize the common law rule for devolution of property may be altered by statute, and Rodney Hogen's arguments require examination of relevant parts of the Uniform Probate Code ("U.P.C."), adopted in North Dakota in 1973. *See* 1973 N.D. Sess. Laws ch. 257, § 1. *See also* N.D.C.C. § 1–01–06 ("[i]n this state there is no common law in any case in which the law is declared by the code").

[¶ 12] Statutory interpretation is a question of law, fully reviewable on appeal. *Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842. The primary objective in interpreting a statute is to determine the intent of the legislation. *Id.* The intent of legislation must be sought initially from the statutory language. *Olson v. Job Serv.*, 2013 ND 24, ¶ 5, 827 N.W.2d 36. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. We construe statutes to give effect to all of their provisions, so that no part of a statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4). Statutory provisions that are part of a uniform statute must be construed to effectuate their general purpose to make uniform the law of those states enacting them. N.D.C.C. § 1–02–13. In construing the U.P.C., we may also

look to the Editorial Board Comment for guidance. *In re Estate of Conley*, 2008 ND 148, ¶ 15, 753 N.W.2d 384.

[¶ 13] Section 30.1–20–03, N.D.C.C. (U.P.C. § 3–903), provides for a right of retainer or offset against a successor's interest in an estate for the amount of a noncontingent indebtedness of the successor to the estate:

> The amount of a noncontingent indebtedness of a successor to the estate if due, or its present value if not due, shall be offset against the successor's interest. But, the successor has the benefit of any defense which would be available to the successor in a direct proceeding for recovery of the debt.

[¶ 14] Under the U.P.C., "'[s]uccessors' means persons, other than creditors, who are entitled to property of a decedent under the decedent's will or ... [by intestate succession under N.D.C.C.] title [30.1]," and "'[p]roperty' includes both real and personal property." N.D.C.C. § 30.1–01–06(43) and (53) (U.P.C. § 1–201(38) and (49)). The language of the retainer statute applies to the "amount of a noncontingent indebtedness ... if due, or its present value if not due," but the U.P.C. does not define a "noncontingent indebtedness."

[¶ 15] One source defines "contingent" as "[p]ossible; uncertain; unpredictable," or "[d]ependent on something that might or might not happen in the future; conditional." *Black's Law Dictionary* 387 (10th ed.2014). Another source defines contingent as "likely but not certain to happen: possible"; "in happening by chance or unforeseen causes." *Merriam Webster's Collegiate Dictionary* 270 (11th ed.2005). Juxtaposing those definitions with the ordinary definition of "non" as the "reverse, absence of, or lacking the usual esp. positive characteristics of the thing specified" in *Merriam Webster's Collegiate Dictionary* at 841, results in ascribing a meaning

to noncontingent as something that is certain to happen or is not conditioned on something that might or might not happen in the future. These sources also define "indebtedness" to mean the condition of owing money or being indebted, or something such as an amount of money that is owed. *Black's Law Dictionary* at 885; *Merriam Webster's Collegiate Dictionary* at 632.

[¶ 16] We conclude a "noncontingent indebtedness" means an amount owed that is certain to occur and is not subject to some future uncertain event which may or may not happen. *See Graber v. Bontrager*, 69 N.D. 300, 305–06, 285 N.W. 865, 868–69 (1939) (defining contingent claim as a claim for which the liability depends upon some future event which may or may not happen and which makes it uncertain whether it will ever be a liability). We further conclude cash rent and crop-share obligations a devisee owes a decedent or the estate are debts or obligations that are certain to happen and are not conditioned on something that might or might not happen in the future. We therefore conclude a devisee's cash rent and crop-share obligations to a decedent are a noncontingent indebtedness under N.D.C.C. § 30.1–20–03 (U.P.C. § 3–903).

[¶ 17] Moreover, the plain language of N.D.C.C. § 30.1–20–03 (U.P.C. § 3–903) authorizes an offset against a "successor's interest" and permits a successor to raise any defense to a noncontingent indebtedness which would be available to the successor in a "direct proceeding" for recovery of the indebtedness. The U.P.C. defines a "proceeding" to include an "action at law and suit in equity." N.D.C.C. § 30.1–01–06(42) (U.P.C. § 1–201(37)). We construe the phrases "successor's interest" and "direct proceeding" in N.D.C.C. § 30.1–20–03 (U.P.C. § 3–903) to give meaning to each phrase and to

authorize the personal representative to allege "offsets against the successor's interest" in the context of the probate of an estate instead of requiring the personal representative to bring a separate lawsuit or direct proceeding to collect the debt. We therefore reject Rodney Hogen's argument the personal representative was required to bring a separate lawsuit to offset Rodney Hogen's indebtedness, if any, to Arline Hogen or to the estate against his successor's interest in the estate.

[¶ 18] Rodney Hogen nevertheless argues his share of Arline Hogen's real property vested in him immediately upon her death under N.D.C.C. § 30.1–12–01 (U.P.C. § 3–101), and the district court should have determined the estate had no right to post-death cash rent and crop-share proceeds from 2007 through 2009 because the estate made no demand, had no administrative need, and did not have possession of the land and the court should have determined the estate had no right to post-death farm rent from 2010 through 2013 because the personal representative did not have possession of the land and Rodney Hogen exercised his right to farm the land as a tenant-in-common owner.

[¶ 19] Section 30.1–12–01, N.D.C.C. (U.P.C. § 3–101), describes the devolution of a decedent's real and personal property to devisees and heirs upon the decedent's death, subject to administration, and provides, in relevant part:

The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the person's property, are subject to the restrictions and limitations contained in this title to facilitate the prompt settlement of estates. Upon the death of a person, the decedent's real and personal property devolves to the persons to whom it is devised by the decedent's last will . . . or in the absence

of testamentary disposition, to the decedent's heirs ... subject to ... administration.

[¶ 20] A personal representative's powers and duties are generally described in N.D.C.C. ch. 30.1–18. A personal representative is a fiduciary under a duty to settle and distribute a decedent's estate under the terms of a will and N.D.C.C. title 30.1 consistent with the best interests of the estate. N.D.C.C. § 30.1–18–03 (U.P.C. § 3–703). Section 30.1–18–11, N.D.C.C. (U.P.C. § 3–711), describes a personal representative's broad power over property of a decedent's estate until termination of the personal representative's appointment and provides:

> Until termination of the personal representative's appointment, a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court.

The Editorial Board Comment to N.D.C.C. § 30.1–18–11 (U.P.C. § 3–711), states:

> The personal representative is given the broadest possible "power over title". He receives a "power", rather than title, because the power concept eases the succession of assets which are not possessed by the personal representative. Thus, if the power is unexercised prior to its termination, its lapse clears the title of devisees and heirs.... The power over title of an absolute owner is conceived to embrace all possible transactions which might result in a conveyance or encumbrance of assets, or in a change of rights of possession. The relationship of the personal representative to the estate is that of a trustee.

A noted practice manual for the U.P.C. explains the personal representative's broad power, subject to administration, over a decedent's property under U.P.C. § 3–711:

> In general, the power[s] of a personal representative [PR] are said to be those that an absolute owner would have, subject only to the trust to exercise the power for the benefit of creditors and others interested in the estate. This general power and any power specifically conferred upon him may be exercised without notice, hearing, or court order. Since the PR has a "power over the title" rather than "title", no gap in title will result if the PR does not exercise his power during the administration. The title of the heir or devisee, however, is "subject to administration"; hence, it remains encumbered so long as the estate is in administration or is subject to further administration.

1 Richard V. Wellman, *Uniform Probate Code Practice Manual* 317–18 (2d ed.1977).

[¶ 21] Section 30.1–18–09, N.D.C.C. (U.P.C. § 3–709), also describes a personal representative's power, subject to administration, over a decedent's property and provides:

> Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for purposes of administration. The request by a personal representative for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession there-

of, that the possession of the property by the personal representative is necessary for purposes of administration. The personal representative shall pay taxes on, and take all steps reasonably necessary for the management, protection, and preservation of, the estate in the personal representative's possession. The personal representative may maintain an action to recover possession of property or to determine the title thereto.

The Editorial Board Comment to N.D.C.C. § 30.1–18–09 (U.P.C. § 3–709), explains the relationship of the devolution of title on death and a personal representative's authority to take possession or control of a decedent's property and states:

Section 30.1–12–01 provides for the devolution of title on death. Section 30.1–18–[11] defines the status of the personal representative with reference to "title" and "power" in a way that should make it unnecessary to discuss the "title" to decedent's assets which his personal representative acquires. This section deals with the personal representative's duty and right to possess assets. It proceeds from the assumption that it is desirable whenever possible to avoid disruption of possession of the decedent's assets by his devisees or heirs. But, if the personal representative decides that possession of an asset is necessary or desirable for purposes of administration, his judgment is made conclusive in any action for possession that he may need to institute against an heir or devisee. It may be possible for an heir or devisee to question the judgment of the personal representative in later action for surcharge for breach of fiduciary duty, but this possibility should not interfere with the personal representative's administrative authority as it relates to possession of the estate.

As Professor Wellman explains:

The Code provides in [U.P.C.] Section 3–101 for devolution of title upon death to the successors. This devolution is expressly stated to be "subject to ... administration" and the right to possession and control of the decedent's property in administered estates is vested in the PR [personal representative] by Section 3–709. Thus, "title" and "power to possess and control" are to be distinguished. The PR is required to possess and to protect all money and intangible assets of the estate. He has the right, in relation to land and tangible personal property, to surrender possession to the persons presumptively entitled to the asset when in his judgment it is in the best interest of the estate. He also has the power at any time to take or retake possession of these assets for the estate, and his request for delivery of any property in the hands of an heir or devisee is conclusive evidence in any action that he may bring to show that possession is necessary for the purposes of administration. . . .

Two other points should be made. The first is that in the full context of Section 3–709, the term "surrender" should not be given the meaning of finality in a common law surrender. This appears from the "unless or until" and the language that follows in the same sentence.

Secondly, the turn-over of possession of land or an item of tangible personal property by the PR to the person presumptively entitled thereto should not be construed as a "distribution." Section 3–709 is obviously concerned with possession for the present time; no finality should attend the PR's decision under this section not to disturb posses-

sion of an estate asset by one presumptively entitled to the asset, or his decision to hand over the possession of an estate asset to such a person for the present. A "distribution" in kind is to be made as provided in Section 3–907; it enables the distributee to pass good title to a good faith purchaser. (Section 3–910). A "distribution" is appropriate only if the PR does not think that the asset will be needed for administration. It reflects the PR's determination that the "distributee" is the correct person to receive the asset. A "distribution" should end the assumption that the PR still has control of the asset, even though Section 3–909 gives rights to recover assets improperly distributed to an estate representative who can assert the right to have distributions "returned." See the official Comment, Section 3–907 *infra*.

1 Wellman, *supra*, at 316–17.

[¶ 22] Section 30.1–20–07, N.D.C.C. (U.P.C. § 3–907), authorizes a personal representative to distribute a decedent's property in kind by an instrument or deed of distribution and provides:

> If distribution in kind is made, the personal representative shall execute an instrument or deed of distribution assigning, transferring, or releasing the assets to the distributee as evidence of the distributee's title to the property.

The Editorial Board Comment to that section explains:

> This and sections following should be read with section 30.1–18–09 which permits the personal representative to leave certain assets of a decedent's estate in the possession of the person presumptively entitled thereto. The "release" contemplated by this section would be used as evidence that the personal representative had determined that he would not need to disturb the possession

of an heir or devisee for purposes of administration.

Under section 30.1–18–11, a personal representative's relationship to assets of the estate is described as the "same power over the title to property of the estate as an absolute owner would have." A personal representative may, however, acquire a full title to estate assets, as in the case where particular items are conveyed to the personal representative by sellers, transfer agents, or others. The language of section 30.1–20–07 is designed to cover instances where the instrument of distribution operates as a transfer, as well as those in which its operation is more like a release.

Under N.D.C.C. § 30.1–20–08 (U.P.C. § 3–908), proof that a distributee has received an instrument or deed of distribution of assets in kind from a personal representative is conclusive evidence that the distributee has succeeded to the interest of the estate in the distributed assets.

[¶ 23] Professor Wellman explains distribution in kind:

> The personal representative is required to execute whatever instrument may be appropriate to the type of property in order to give the distributee evidence of his inheritance. When the distributee is already in possession of such property, the appropriate form may be a release. When the property to be transferred is real estate, the appropriate instrument is a deed.

> The instrument of distribution does not, in the purest sense of the words, cause the vesting in interest of the title of the devisee or heir; rather, it transforms the beneficiary's beneficial interest in the estate, as acquired by him at death by the operation of Section 3–101, from an equitable right to receive his due interest in the estate to regular owner-

ship of the asset distributed. The ownership as distributed is not necessarily the distributee's only right since the distributee may have additional claims on the PR for further distributions or for money to make him whole on account of breaches of duty by the PR. Rather, it is evidence that, as between the PR and the distributee, since the former has discharged his responsibility for administering the distributed asset, the latter is now entitled to hold himself out to the world as its full owner. Distribution is a release of the PR's primary right to possess the asset for administration purposes, although it does not follow that the same or a successor PR may not later be entitled to a return of the distributed asset if that is found necessary in order to correct a defective distribution. . . .

The distributive acts of a PR, whether consisting of payments by check or in cash, physical delivery of possession, or execution and delivery of an instrument or distribution, are quite important. These acts reflect the PR's determination of heirs in intestacy, his interpretation of the will in a testate case, and his conclusion regarding the identity of the taker and the propriety of the distribution in the light of all of his duties as estate fiduciary. These and other determinations by the PR are given importance by the Code and are considered administrative determinations that are assumed to be correct. Errors can be corrected, of course, but the Code seeks to give these administrative acts of the PR considerable stability and stature. Sections 3–908, 3–909, and 3–910 of the Code supply many details regrading the consequences of distributions.

Wellman, *supra*, at 384–85.

[¶ 24] This Court has recognized a devisee's right to a decedent's property is subject to administration by a personal representative. *Feickert v. Frounfelter*, 468 N.W.2d 131, 132 (N.D.1991). We have also said a personal representative has power over title to property during the administration of an estate. *Green v. Gustafson*, 482 N.W.2d 842, 846 n. 3 (N.D. 1992). In *Matter of Estate of Johnson*, 2015 ND 110, ¶ 19, 863 N.W.2d 215, we recently construed several of the preceding statutory provisions about a devisee's title to property during the administration of an estate, to pass title to a decedent's property to devisees at death, subject to a personal representative's broad power over title for administration purposes. We held a personal representative had statutory authority under N.D.C.C. § 30.1–18–15 (U.P.C. § 3–715) to retain and lease farmland in an estate for administration purposes for the benefit of interested persons. *Estate of Johnson*, at ¶ 19. We recognized states with statutes similar to N.D.C.C. § 30.1–18–15 had reviewed whether a personal representative's sale or lease of an estate's land was reasonable. *Estate of Johnson*, at ¶ 18 (citing *Matter of Estate of Booth*, 202 Neb. 6, 272 N.W.2d 915, 916 (1978) and *In re Estate of Corbin*, 637 So.2d 51, 52 (Fla.Dist.Ct.App.1994)). In *Estate of Johnson*, at ¶ 19, we held a personal representative could lease farmland for a term within or extending beyond the period of administration if the personal representative acted reasonably for the benefit of interested persons.

[¶ 25] Under the U.P.C. statutory scheme, a devisee's right to a decedent's property is subject to administration by a personal representative, which may continue until termination of the personal representative's appointment or execution of an instrument or deed of distribution, and nothing in the statutory scheme for title to a decedent's land requires a personal representative to take actual possession of the

property to effectuate an offset. Rather, N.D.C.C. § 30.1–18–09 (U.P.C. § 3–709) contemplates the personal representative may take "possession or control" of property except that any real property may be left with the person presumptively entitled thereto unless or until possession or control is necessary for purposes of administration. The personal representative's power or control over the decedent's property or estate during administration may be exercised without notice, hearing, or an order and may continue until termination of the personal representative's appointment, or execution of an instrument or deed of distribution transferring the assets to the distributee. *See* N.D.C.C. §§ 30.1–18–11 (U.P.C. § 3–711), 30.1–20–07 (U.P.C. § 3–907) and 30.1–20–08 (U.P.C. § 3–908).

[¶ 26] We construe the statutory scheme in N.D.C.C. title 30.1 to authorize the personal representative, during administration of the estate, to pursue a retainer claim against real property in an estate for assertions involving a devisee's rental obligations to the decedent or the estate. Under the statutory provisions, a devisee's title to the decedent's property is encumbered as long as the estate is subject to administration. *See* N.D.C.C. § 30.1–18–11 (U.P.C. § 3–711).

[¶ 27] Steven Hogen was the duly authorized personal representative of Arline Hogen's estate engaged in administration of the estate, and he executed no instrument or deed of distribution transferring or releasing the property to Rodney Hogen. *See* N.D.C.C. §§ 30.1–20–07 (U.P.C. § 3–907) and 30.1–20–08 (U.P.C. § 3–908). Rather, the record reflects the estate leased the land to Rodney Hogen while the estate was being administered. *See Estate of Johnson*, 2015 ND 110, ¶ 19, 863 N.W.2d 215. We reject Rodney Hogen's claims that as the personal representative of the estate, Steven Hogen may not

pursue a retainer claim against Rodney Hogen for post-death crops and farm rentals because the estate made no demand, had no administrative need, and did not have possession of the lands, or because the personal representative did not have possession of the land and Rodney Hogen exercised his rights as a tenant-in-common owner. We also conclude the statutory scheme for a personal representative's powers during administration of the estate does not preclude the personal representative from seeking a retainer for conservation reserve program payments attributable to the estate's Cass County land for the 2010 through 2013 crop years. We conclude the district court did not err in determining the devolution of real property to Rodney Hogen was subject to the personal representative's power during administration of the estate to offset any noncontingent indebtedness he owed to Arline Hogen or her estate.

### B

[¶ 28] Rodney Hogen argues the personal representative's claim for a retainer is barred by the three-month limitation in N.D.C.C. § 30.1–19–03(2) (U.P.C. § 3–803) and by the three-year limitation in N.D.C.C. § 30.1–21–06 (U.P.C. § 3–1006).

[¶ 29] Section 30.1–19–03(2), N.D.C.C. (U.P.C. § 3–803), provides:

All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

a. A claim based on a contract with the personal representative, within four

months after performance by the personal representative is due.

b. Any other claim, within three months after it arises.

■ [¶ 30] The plain language of N.D.C.C. § 30.1–19–03(2) (U.P.C. § 3–803) applies to "claims against a decedent's estate" and does not apply to claims an estate may have against devisees for a retainer. We conclude the personal representative's claim for a retainer is not barred by the plain language of N.D.C.C. § 30.1–19–03(2) (U.P.C. § 3–803).

[¶ 31] Section 30.1–21–06, N.D.C.C. (U.P.C. § 3–1006), provides:

Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or unless otherwise barred, the claim of any claimant to recover from a distributee who is liable to pay the claim, and the right of any heir or devisee, or of a successor personal representative acting in their behalf, to recover property improperly distributed or the value thereof from any distributee is forever barred at the later of:

1. Three years after the decedent's death.

2. One year after the time of distribution thereof.

This section does not bar an action to recover property or value received as the result of fraud.

■ [¶ 32] The plain language of N.D.C.C. § 30.1–21–06 (U.P.C. § 3–1006), applies to time limits to "recover property improperly distributed … from any distributee." A personal representative's claim for a retainer against a devisee is not a claim to "recover property improperly distributed," and we conclude the personal representative's claim for a retainer is not barred by the plain language of N.D.C.C. § 30.1–21–06 (U.P.C. § 3–1006).

C

[¶ 33] Rodney Hogen argues the district court clearly erred in determining the amount of the retainer or offset. He argues the court failed to subtract 81.3 acres of conservation reserve program land in Barnes County in determining the cash rent due for the Barnes County land and in determining the average per acre cost of production for crop-share calculations for the Cass County land. He also claims the court erred in admitting evidence under N.D.R.Ev. 602, 701, and 802.

■ [¶ 34] To the extent Rodney Hogen argues the district court erred in admitting evidence under the cited rules of evidence, he has not marshaled any argument with supporting authority on the evidentiary issues, and we decline to consider those issues on appeal. *See Hale v. State*, 2012 ND 148, ¶ 12, 818 N.W.2d 684 ("we are not ferrets and we 'will not consider an argument that is not adequately articulated, supported, and briefed' ").

■ [¶ 35] To the extent Rodney Hogen argues the district court erred in failing to subtract about 81 acres of conservation reserve program land in Barnes County in determining cash rent due for the Barnes County land and in determining the average per acre cost of production for crop-share calculations for the Cass County land, we agree with him that the record reflects the court failed to account for the conservation reserve program land in those calculations. During oral argument, counsel for the personal representative conceded minor adjustments to the retainer may be necessary. We decline to make those adjustments on the record before us, and we reverse the district court's determination of the retainer to that limited extent and direct the court to recalculate the retainer after considering the ef-

fect of the Barnes County conservation reserve program land on the cash rent for the Barnes County land and on the average per acre cost of production for the Cass County land.

[¶ 36] We conclude that review of the district court's other findings about the terms of lease arrangements for the relevant years, and the unpaid cash rent, crop-share proceeds, and conservation reserve program payments are governed by N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake was made. *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144. Under N.D.R.Civ.P. 52(a), we do not reweigh conflicting evidence and a choice between two permissible views of the evidence is not clearly erroneous. *Brandt*, at ¶ 12.

[¶ 37] Except for calculations involving the Barnes County conservation reserve program land, evidence in the record supports the district court's findings about payments Rodney Hogen owed Arline Hogen and the estate for post-death cash rent, crop-share proceeds, and conservation reserve program payments. Steven Hogen and an accountant, Wayne Bradley, testified about the amount due for those obligations and Rodney Hogen's failure to make payments. Although Rodney Hogen disputed the personal representative's evidence, there was conflicting evidence about the extent of his obligations and payments under relevant agreements. We conclude the court's findings were not induced by an erroneous view of the law, and we are not left with a definite and firm conviction the court made a mistake. Except for a recalculation based on the Barnes County conservation reserve pro-

gram land, we conclude the court's findings are not clearly erroneous.

## III

[¶ 38] In the personal representative's cross-appeal, Steven Hogen argues the district court clearly erred in determining the estate was not entitled to a greater offset from Rodney Hogen.

### A

[¶ 39] Steven Hogen initially argues the district court clearly erred in finding Rodney Hogen did not purloin $23,329.75 from the Curtiss Hogen Trust, which was set up to provide Arline Hogen with a stream of income.

[¶ 40] The district court determined the personal representative's claim about purloined money from the Curtiss Hogen Trust was subject to a contingency within the meaning of N.D.C.C. § 30.1–20–03, because the Trust was not a party to the probate proceeding and any money allegedly due to the Trust could not be considered in the probate proceeding. The court explained the Trust could bring a direct action against Rodney Hogen for any money allegedly due the Trust. We agree with the court's conclusion that any money Rodney Hogen owed to the Trust was subject to a contingency for purposes of a retainer against Arline Hogen's estate under N.D.C.C. § 30.1–20–03, and we conclude the district court did not err in rejecting that claim.

### B

[¶ 41] Steven Hogen also argues the district court clearly erred in determining Arline Hogen waived pre-death cash rent and crop-share proceeds owed by Rodney Hogen to her. Steven Hogen argues Arline Hogen was confined to an Alzheimer's unit in a nursing home in

2002, Rodney Hogen never talked with Arline Hogen about reconciling payments for the cash rent and crop-share proceeds against her input costs, the shortages were not discovered until after her death, and she could not have voluntarily and intentionally waived any payment deficiencies for crop years 2004 through 2006.

[¶ 42] The district court found that in reconciling his yearly cash rent and crop-share payments to Arline Hogen against her input costs, Rodney Hogen had not always credited her for excess input costs or paid her for her full one-sixth of crop-share proceeds for the Cass County land, but explained:

> Rodney testified that he reconciled his cash rent obligations, his crop-share obligations and his mother's crop-share expenses every year. Rodney's "reconciliation" certainly wasn't done with any type of accounting standard in place. It is evident that the expenses that Rodney paid on behalf of the landlord for the Cass County crop share were less than the cash rent owed on the Barnes County land. The Court, more importantly, finds that Rodney's farming relationship with his mother was not defined by exact standards. The so-called contract was more or less a loose guideline. What Rodney may have deemed reconciled was, in fact, Arline agreeing that what was received was good enough. This is based on Rodney's history of farming the property, the past course of conduct of the parties and the estate planning documents executed by Arline and Curtiss Hogen indicating a specific desire to maintain the farming operation. Any alleged shortfalls for Arline for the years 2004, 2005 and 2006 are deemed to have been waived and Rodney's contractual obligations to Arline were satisfied.

[¶ 43] A waiver requires a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit. *Miller v. Walsh Cnty. Res. Dist.*, 2012 ND 152, ¶ 27, 819 N.W.2d 526. Here, there was evidence Arline Hogen had been in an Alzheimer's wing at a nursing home since 2002. She had not been judicially determined to be incompetent, however, and Steven Hogen testified she was capable of handling some of her affairs and she wrote some checks for gifts after 2002. There also was evidence Rodney Hogen had farmed the land under arrangements with the Curtiss Hogen Trust and with Arline Hogen at least since Curtiss Hogen died in 1993. The district court applied the parties' course of conduct over several previous years to Rodney Hogen's reconciliations for the claimed years to determine any alleged shortfalls were deemed waived and his reconciliations satisfied his contractual obligations. The court explained that what Rodney Hogen deemed reconciled over the course of the parties' contractual relationship was Arline Hogen agreeing that his reconciliations were sufficient to satisfy his contractual obligations. The parties' course of conduct over the years indicates they did not abide by all the contractual terms for their farming arrangement and provides support for the court's finding that Rodney Hogen's yearly reconciliations of his obligations satisfied his specific obligations for the 2004 through 2006 crop years. On the record in this case, we decline to reweigh the evidence about the parties' course of conduct and prior reconciliations or Arline Hogen's agreement about the sufficiency of Rodney Hogen's reconciliations. We conclude the court did not clearly err in determining the estate was not entitled to a retainer for the crop years from 2004 through 2006.

## IV

[¶ 44] Rodney Hogen argues the district court abused its discretion in not re-

moving Steven Hogen as the personal representative of the estate and in awarding Steven Hogen personal representative fees and attorney fees, costs, and expert witness fees from the estate.

### A

[¶ 45] Under N.D.C.C. § 30.1–17–11 (U.P.C. § 3–611), a person interested in an estate may petition for removal of a personal representative for cause, which exists when removal would be in the best interest of the estate, or the personal representative has mismanaged the estate or failed to perform a duty pertaining to the office. A district court has discretion to remove a personal representative, and the court's decision will not be set aside on appeal absent an abuse of discretion. *Estate of Shubert*, 2013 ND 215, ¶ 27, 839 N.W.2d 811. A court abuses its discretion "when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

[¶ 46] A cursory review of the record in this case reflects a contentious probate dispute between the parties and their attorneys. On this record, we cannot say the district court's denial of Rodney Hogen's request to remove Steven Hogen as personal representative was arbitrary, capricious, or unreasonable. We therefore conclude the court did not abuse its discretion in denying Rodney Hogen's request to remove Steven Hogen as personal representative of the estate.

### B

[¶ 47] Rodney Hogen argues the district court abused its discretion in awarding Steven Hogen $27,500 in personal representative fees from the estate, because Steven Hogen pursued the retainer claim for his personal benefit without benefiting the estate and he failed to account for his time administering the estate.

[¶ 48] Under N.D.C.C. § 30.1–18–19 (U.P.C. § 3–719), a personal representative is entitled to reasonable compensation for services rendered for an estate. We review an award of personal representative fees under the abuse-of-discretion standard. *Estate of Flaherty*, 484 N.W.2d 515, 521 (N.D.1992). The district court recognized the extensive volume of work done by Steven Hogen for the estate and that the actions taken by him were all done in good faith. The court awarded Steven Hogen $27,500 in personal representative fees. We agree with the court's assessment of the volume of work done by Steven Hogen to reconstruct the parties' financial records for several years. The court's decision about personal representative fees was the product of a rational mental process leading to a reasoned determination and was not arbitrary, capricious, or unreasonable. We conclude the court did not abuse its discretion in awarding Steven Hogen personal representative fees from the estate.

### C

[¶ 49] Rodney Hogen argues the district court abused its discretion in awarding the personal representative $333,272.23 in attorney fees, costs, and expert witness fees from the estate, because Steven Hogen allegedly pursued the retainer claim for his personal interest.

[¶ 50] Section 30.1–18–20, N.D.C.C. (U.P.C. § 3–720), authorizes a district court to award a personal representative necessary expenses and disbursements, including reasonable attorney fees, from an estate for prosecuting estate proceedings in good faith, whether successful or not. A personal representative's

actions must be in good faith and for the benefit of the estate. *Matter of Estate of Peterson,* 1997 ND 48, ¶ 25, 561 N.W.2d 618; *Estate of Flaherty,* 484 N.W.2d at 518. A benefit to the estate includes a personal representative's good faith attempt to effectuate a testator's testamentary intent or to increase the assets in the estate. *Peterson,* at ¶ 26; *Flaherty,* at 518. We review an award of attorney fees under the abuse of discretion standard. *Flaherty,* 484 N.W.2d at 519.

[¶ 51] Although the amount of awarded attorney fees in this case is large, the district court provided a reasoned explanation for the award, including consideration of the "lodestar" rate, and the fact the case involved "tough litigation" and was "hard going." This proceeding involved lengthy evidentiary hearings and issues related to reconstructing financial records and tracing crop-share proceeds and cash rent over several years for farmland in contentious litigation. Rodney Hogen vigorously litigated the retainer issue, which required Steven Hogen to expend additional resources to resolve the issue. We have recognized a party "'cannot litigate tenaciously and then be heard to complain about the time necessarily spent' overcoming its vigorous defense." *Duchscherer v. W.W. Wallwork, Inc.,* 534 N.W.2d 13, 19 (N.D.1995) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)). The district court determined Steven Hogen acted in good faith and pursued funds owed to the estate. Steven Hogen's duty to effectuate an equal distribution of Arline Hogen's estate by collecting all assets belonging to the estate, including offsetting Rodney Hogen's debts to the estate, applies regardless of whether Steven Hogen was also a beneficiary under the will. On this record, we conclude the district court's award of attorney fees was not arbitrary, capricious, or unreasonable. We conclude the court did not abuse its discretion in awarding the personal representative attorney fees and expert witness fees from the estate.

V

[¶ 52] We have considered any remaining issues and arguments raised by the parties, and we conclude they are either unnecessary to our decision or are without merit. We affirm the district court order in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 53] LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.