MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:    2019 ME 158
Docket:      Han-18-471
Argued:      October 10, 2019
Decided:     November 26, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

SEAN C. CLARK et al.

v.

BETH M. CLARK

MEAD, J.

[¶1]   Sean C. Clark appeals from a judgment of the Superior Court (Hancock County, *R. Murray, J.*) denying his motion for summary judgment and granting Beth M. Clark's cross-motion for summary judgment. Sean's complaint sought a declaratory judgment that he and Jason A. Clark are each vested with a one-eighth share of certain real properties as tenants in common with Beth. On this record, we affirm the judgment of the Superior Court that Beth has exclusive ownership of the properties, having acquired her brother Kevin's undivided half interest through a joint tenancy right of survivorship.

I.  BACKGROUND

[¶2]   We review a ruling on cross-motions for summary judgment "de novo, reviewing the trial court's decision for errors of law and considering

the evidence in the light most favorable to the party against whom the judgment has been granted in order to determine whether there is a genuine issue of material fact." *Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 5, 206 A.3d 307. This case presents no genuine dispute of material fact. "We draw the facts from the parties' statements of material facts, all of which are supported by references to the evidentiary record." *Lee v. Town of Denmark*, 2019 ME 54, ¶ 2, 206 A.3d 907.

[¶3]  On December 28, 2009, Ruth M. Clark died testate.  Ruth had three children: Beth M. Clark, Kevin J. Clark, and Bruce A. Clark.  Bruce predeceased Ruth, while Beth and Kevin survived Ruth.  Ruth's heirs at law were Beth (defendant-appellee); Kevin; and two grandsons, Sean C. Clark (plaintiff-appellant) and Jason A. Clark (party-in-interest), who are Bruce's children.

[¶4]  Ruth's will devised her estate, which included two properties in Sorrento and Great Pond (the properties), to Beth and Kevin to "equally share and share alike."  Ruth's will was admitted to informal probate, and Beth was appointed personal representative of the estate on January 11, 2010.  Beth and Kevin met with an attorney, who discussed with them the differences between taking title as tenants in common or as joint tenants, and who testified in his

deposition that Beth and Kevin expressed their clear desire for a joint tenancy. Acting as personal representative, Beth executed deeds of distribution to the properties to herself and Kevin as "joint tenants" on June 30, 2010. Neither Beth nor Kevin challenged the joint tenancy nature of the deeds of distribution thereafter.[1] On January 10, 2017, Kevin died intestate, unmarried, and without issue, leaving Beth, Sean, and Jason as his sole heirs.

[¶5] On April 4, 2017, Sean and Jason[2] filed a complaint, later amended, in the Superior Court seeking a declaratory judgment that they were each entitled to a one-eighth interest in the properties as tenants in common with Beth. *See* 14 M.R.S. § 5954 (2018). The parties filed cross-motions for summary judgment pursuant to M.R. Civ. P. 56, and the court granted a summary judgment to Beth on November 1, 2018.

[¶6] Sean appeals, arguing that (1) Beth and Kevin took title as tenants in common immediately upon Ruth's death; (2) as Ruth's personal representative, Beth lacked the authority to unilaterally change the devise from a tenancy in common to a joint tenancy; and (3) Beth and Kevin could not alter

---

[1] Sean denied this fact in his response to Beth's opposing and additional statements of material fact. However, his denial spoke to a different issue—whether Sean and Jason had standing to challenge the distribution before Kevin's death—and failed to provide a record citation. As such, the fact was not properly controverted and is deemed admitted. *See* M.R. Civ. P. 56(h)(4).

[2] Prior to this appeal, Jason removed himself as co-plaintiff and became a party-in-interest. *See* M.R. Civ. P. 21.

4

the property interest from a tenancy in common to a joint tenancy without a written agreement pursuant to 18-A M.R.S. § 3-912 (2018).[3]

## II.  DISCUSSION

A.    Nature of Title and the Power of the Personal Representative

[¶7]  We interpret the Probate Code de novo as a question of law.  *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 11, 105 A.3d 439.  In our review, "we first look to the plain meaning of the statute, interpreting its language to avoid absurd, illogical, or inconsistent results."  *Estate of Reed*, 2016 ME 90, ¶ 6, 142 A.3d 578 (quotation marks omitted).

[¶8]  The plain language and intent of Maine's Probate Code, which is modeled on the Uniform Probate Code (UPC), support Beth's theory of the case—that vesting of title upon the decedent's death is conditioned upon administration of the estate.[4]  Title 18-A M.R.S. § 3-101 (2018) provides,

> Upon the death of a person, his real and personal property devolves to the persons to whom it is devised by his last will . . . , *subject . . . to administration*.

---

[3] The Maine Probate Code was recently repealed and recodified.  All Probate Code citations in this opinion are to the repealed 2018 version. The relevant text is unchanged in the new codification. *See* P.L. 2017, ch. 402, § A-2 (codified at 18-C M.R.S. §§ 3-101, 3-711, 3-715, 3-907, 3-912 (2018)); P.L. 2019, ch. 417, § A-103 (establishing effective date of September 1, 2019).

[4] To the extent that any latent ambiguity may linger regarding the language and intent of the UPC, the Maine Probate Law Revision Commission, Report of the Commission's Study and Recommendations Concerning Maine Probate Law (Oct. 1978), and leading treatises offer solid support for our conclusions.

(Emphasis added.) Citing a string of cases that predate Maine's enactment of the UPC, Sean argues that section 3-101 merely codifies the common law rule that title to real property passes at the moment of the decedent's death. However, as the Superior Court observed, Sean's interpretation "discounts the impact the phrase 'subject . . . to administration' has on the devolution" of property. To aid its interpretation, the court drew from the rationale expressed in a recent North Dakota Supreme Court decision, which we now adopt in part. *Estate of Hogen*, 863 N.W.2d 876 (N.D. 2015).

[¶9] In *Estate of Hogen*, Arline Hogen's will devised her property equally to her two surviving sons, Steven and Rodney Hogen. *Id.* at 881. Steven, acting as the personal representative of the estate, sought a retainer against Rodney, claiming that Rodney owed payments to Arline before her death and that her estate was thus authorized to offset the indebtedness. *Id.* Among other things, Rodney argued that his share of Arline's property "vested in him immediately upon her death" under North Dakota's version of UPC section 3-101. *Id.* at 884. *See* N.D. Cent. Code § 30.1-12-01 (2015). The North Dakota Supreme Court rejected Rodney's argument, concluding that under the UPC, title vests subject to administration, rather than vesting immediately upon the decedent's death.

6

*See Estate of Hogen*, 863 N.W.2d at 884-89.  In ruling, the court conducted an extensive analysis of a number of UPC provisions.  *Id.*

[¶10]  The UPC signaled a shift that broadened the powers of the personal representative.  *See* Maine Probate Law Revision Commission, Report of the Commission's Study and Recommendations Concerning Maine Probate Law 242, 259, 267-68 (Oct. 1978).  Section 3-711 of Maine's Probate Code grants a personal representative

> the same *power over the title* to property of the estate that an *absolute owner* would have, in trust however, for the benefit of the creditors and others interested in the estate.  This power may be exercised without notice, hearing or order of court, except as limited by this section.

18-A M.R.S. § 3-711 (2018) (emphasis added).  Sean is correct that a personal representative holds "power" over the title rather than title itself.  However, the UPC's drafters explained that this distinction "eases the succession of assets which are not possessed by the personal representative.  Thus, if the power is unexercised prior to its termination, its lapse clears the title of devisees and heirs."  U.P.C. § 3-711 cmt., *included with* 18-A M.R.S.A. § 3-711 (2012); *see Estate of Hogen*, 863 N.W.2d at 885.

[¶11]  As a leading treatise on the UPC has explained,

> Since the [personal representative] has a "power over the title" rather than "title[,]" no gap in title will result if the [personal

representative] does not exercise his power during the administration. The title of the heir or devisee, however, is "subject to administration"; hence, it remains encumbered so long as the estate is in administration or is subject to further administration.

Ass'n of Continuing Legal Educ. Adm'rs, *Uniform Probate Code Practice Manual* 318 (Richard V. Wellman ed., 2d ed. 1977); *see Estate of Hogen*, 863 N.W.2d at 885. As a Maine treatise confirms, the personal representative's power over title "permits the personal representative to sell or convey the property. If this power is not exercised, title remains with the heirs or devisees to whom the property devolved upon the death of the decedent, under Section 3-101." Hunt, *Maine Probate Law* § 3.711 at 173 (1999). Where, as here, the personal representative exercises her administrative powers, passage of title is subject to those powers.

[¶12] That said, a personal representative's powers, though broad, are not unbridled. The Code provides important safeguards to curb potential abuses of power by the personal representative. As an example, section 3-711 characterizes the personal representative as a fiduciary, a trustee who must treat property "in trust . . . for the benefit of the creditors and others interested in the estate." 18-A M.R.S. § 3-711. Further, the Probate Code provides a

8

number of avenues for "interested persons"[5] to challenge a personal representative's actions. *See* U.P.C. § 3-711 cmt., *included with* 18-A M.R.S.A. § 3-711 (2012) (highlighting UPC sections 3-501 (supervised administration), 3-605 (demand for bond), 3-607 (order restraining personal representative), and 3-611 (removal of personal representative)). Relative to her duties as personal representative of Ruth's estate as provided by Ruth's will, Beth owed a duty to herself and Kevin as devisees, but neither she nor Kevin challenged the deeds of distribution. Therefore, upon these facts, Beth was clearly authorized to act in her capacity as personal representative and no breach of any fiduciary duty has occurred.

[¶13] The deeds of distribution effectively conveyed the properties in joint tenancy. If Beth had first conveyed the properties by way of deeds of distribution to herself and Kevin as tenants in common and then she and Kevin had jointly conveyed the properties to themselves as joint tenants, there would be no question that Beth would now own the properties in full. Thus, the issue, as posed by Sean, is whether the deeds of distribution that Beth (acting in her

---

[5] Under the Code's definition, interested persons include "heirs, devisees, children, spouses, domestic partners, creditors, beneficiaries and any others having a property right in or claim against a trust estate or the estate of a decedent." 18-A M.R.S. § 1-201(20) (2018).

capacity as personal representative) conveyed to herself and Kevin as joint tenants effectively created a joint tenancy.

[¶14] Sean relies on language in section 3-907 to assert that the deeds of distribution serve as mere evidence of title rather than as conveyances of title itself. Section 3-907 provides,

> If distribution in kind is made, the personal representative shall execute an instrument or deed of distribution assigning, transferring or releasing the assets to the distributee as evidence of the distributee's title to the property.

18-A M.R.S. § 3-907 (2018). But section 3-907 by its plain language does not indicate that a deed of distribution *only* serves as evidence of title rather than title itself. "The 'release' contemplated by [section 3-907] would be used as evidence that the personal representative had determined that he would not need to disturb the possession of an heir or devisee for purposes of administration." U.P.C. § 3-907 cmt., *included with* 18-A M.R.S.A. § 3-907 (2012). As the Superior Court acknowledged, "[t]he language of Section 3-907 is designed to cover instances where the instrument of distribution operates as a transfer, as well as those in which its operation is more like a release." *See* U.P.C. § 3-907 cmt., *included with* 18-A M.R.S.A. § 3-907 (2012). Here, the personal representative's deeds of distribution operated as a transfer of title to herself and Kevin as joint tenants.

10

## B. Section 3-912

[¶15] Section 3-912 of the Code reads in part,

> Subject to the rights of creditors and taxing authorities *competent successors may agree* among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent . . . in any way that they provide in a written contract executed by all who are affected by its provisions. The *personal representative shall abide by* the terms of the agreement subject to his obligation to administer the estate . . . .

18-A M.R.S. § 3-912 (emphasis added). As we have previously determined, "[o]n its face, section 3-912 sets forth the requirements for a contract *among successors* to be binding on a personal representative." *See Estate of Snow*, 2014 ME 105, ¶ 16, 99 A.3d 278 (citation omitted); *see* Maine Probate Law Revision Commission, Report of the Commission's Study and Recommendations Concerning Maine Probate Law 388, 390 (Oct. 1978) ("Indeed, the focus of UPC 3-912 is on the effect of such agreements on the personal representative."). *See also* Hunt, *Maine Probate Law* § 3.912 at 214-15 ("The purpose is to assure that a personal representative, in seeking to fulfill the obligation to administer an estate and make distribution as provided in the will or the laws of intestate succession, will not insist on making distribution in a fashion contrary to the wishes of the distributees."). In sum, contrary to Sean's contention, section 3-912 did not require Beth and Kevin to execute a

written agreement to receive their shares in joint tenancy. Rather, the section permits successors who are not personal representatives to use a writing to bind the personal representative.

[¶16] The Superior Court correctly concluded that section 3-912 did not prevent the distributions Beth made as personal representative. The court found that Beth and Kevin, the only successors to the will, did not enter into a written agreement to bind Beth as personal representative. It is clear from the record, however, that Beth and Kevin, after speaking with an attorney, mutually chose to take ownership as joint tenants. Section 3-912 is of no consequence here because the parties to the agreement were the personal representative herself and Kevin, and both agreed to take title to the properties as joint tenants. No written agreement was necessary to compel Beth to make the transfer. The Superior Court correctly concluded that Beth was entitled to summary judgment.

The entry is:

Judgment affirmed.

Barry K. Mills, Esq. (orally), Hale & Hamlin, LLC, Ellsworth, for appellant Sean C. Clark

Allison A. Economy, Esq., and Jonathan P. Hunter, Esq. (orally), Rudman Winchell, Bangor, for appellee Beth M. Clark

Hancock County Superior Court docket number RE-2017-13
FOR CLERK REFERENCE ONLY