20200298

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
NOVEMBER 24, 2020
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 251

| | |
|---|---|
| Doug Burgum, in his capacity as North Dakota's Governor, | Petitioner |
| v. | |
| Alvin Jaeger, in his capacity as North Dakota's Secretary of State; the North Dakota Legislative Assembly, Chet Pollert, Chairman of Legislative Management; and the District 8 Republican Committee, Loren DeWitz, District Chairperson, | Respondents |
| and | |
| Democratic Non-Partisan League District 8 House of Representatives Candidate Kathrin Volochenko, | Intervenor |

## No. 20200298

Petition for Writ of Mandamus.

LEGAL STATUS DECLARED, RELIEF DENIED.

Opinion of the Court by Crothers, Justice.

Robert J. Pathroff (argued) and Megan J. Gordon and Nick M. Surma (on brief), Bismarck, ND, for petitioner.

Wayne K. Stenehjem, Attorney General (argued), and David R. Phillips (on brief), Bismarck, ND, for respondents Alvin Jaeger, in his capacity as North

Dakota's Secretary of State and the North Dakota Legislative Assembly, Chet Pollert, Chairman of Legislative Management.

John M. Olson, Bismarck, ND, for respondent District 8 Republican Committee, Loren DeWitz, District Chairperson.

David C. Thompson (argued), Grand Forks, ND, and Duane A. Lillehaug (on brief), Fargo, ND, for intervenor Democratice Non-Partisan League (DEM-NPL) District 8 House of Representative Candidate Kathrin Volochenko.

Tyler Yeargain (on brief), New Haven, CT, amicus curiae.

Jonathan T. Garaas (on brief), Fargo, ND, amicus curiae.

**Crothers, Justice.**

[¶1]   Governor Doug Burgum petitions this Court to exercise our original jurisdiction to issue declarations and a writ of mandamus concerning who appoints the replacement after the pre-election death of a candidate for an office in the Legislative Assembly.  We declare the legal status and deny the requested relief.

I

[¶2]   The petition concerns the office of State Representative for District Eight.  The facts are not in dispute. Four candidates appeared on the 2020 general election ballot for two available seats in that office.   Kathrin Volochenko and Linda Babb were Democratic-NPL Party candidates. Dave Nehring and David Andahl were Republican Party candidates.  None of them were incumbents.

[¶3]   On October 5, 2020 Andahl died.  That date was twenty-nine days before the election, after ballots were printed and early voting had begun. Subsequently, Secretary of State Alvin Jaeger requested from Attorney General Wayne Stenehjem advice about "[w]hat the result or effect will be of the votes that are cast for the deceased candidate."  N.D. Op. Att'y Gen. 2020-L-08 (October 13, 2020).  On October 13, 2020, Stenehjem issued a letter opinion stating "our court follows the majority of states that use the 'American' rule, where votes cast for the deceased candidate would be counted."  *Id.* Stenehjem concluded:

> "The North Dakota State Constitution provides that '[t]he legislative assembly may provide by law a procedure to fill vacancies occurring in either house of the legislative assembly.' The legislative assembly has done so, and the process is set forth in N.D.C.C. § 16.1-13-10.  Upon the application of state law and the 'American' rule, it is my opinion that this would be the appropriate method to fill a vacancy."

*Id.* at p. 5.

[¶4] Election day totals showed Nehring received the most votes and Andahl received the second most votes. The day after the election, the Governor announced his intention to appoint an individual to fill the office Andahl presumably would have filled. In accordance with Attorney General Letter Opinion 2020-L-08, the election results were certified but no certificate of election was issued to Andahl because of his death. Officials for the District Eight Republican Committee announced their intention to appoint an individual to fill the office. Volochenko received the third most votes. She intervened in this case and claims no vacancy in office will exist because she was elected to the office.

II

[¶5] The Governor requested the following relief:

"1. A declaration that the late David Andahl does not meet the qualifications to hold the office of a member of the legislative assembly and therefore may not receive a certificate of election and become a member of the legislative assembly.

2. A declaration that N.D.C.C. § 16.1-13-10 is inapplicable to the vacancy created by David Andahl's death and subsequent receipt of the second most votes at the November 3, 2020 election.

3. A declaration that no method is provided by the North Dakota Constitution or by North Dakota law to fill the vacancy except N.D. Const. art. V, § 8, and that the Governor has the constitutional authority to fill the vacancy by gubernatorial appointment pursuant to N.D. Const. art. V, § 8.

4. Preliminary injunctive relief and a writ of injunction enjoining the Secretary of State from issuing a certificate of election to the late David Andahl, and from issuing a certificate of appointment and oath of office to an appointee of the District 8 Republican Committee or the chairman of legislative management under the procedure provided at N.D.C.C. § 16.1-13-10; and enjoining the District 8 Republican Committee or the chairman of legislative

2

management from selecting an individual to fill the vacancy under the procedure provided at N.D.C.C. § 16.1-13-10.[1]

5. A writ of mandamus compelling the Secretary of State to attest the Governor's written appointment of an individual to fill the vacancy after certification of election results by the State Canvassing Board, and compelling the Secretary of State to issue a certificate of appointment and oath of office to the Governor's appointee after the certification of the results."

[¶6] This Court has "original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary . . . ." N.D. Const. art. VI, § 2. Our authority to issue original writs is discretionary. *Berg v. Jaeger*, 2020 ND 178, ¶ 7, 948 N.W.2d 4. "The power to exercise our original jurisdiction extends only to those cases where the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people." *Onstad v. Jaeger*, 2020 ND 203, ¶ 7, 949 N.W.2d 214 (quoting *Berg*, at ¶ 7). "The interest of the state must be primary, not incidental, and the public must have an interest or right that is affected." *Riemers v. Jaeger*, 2018 ND 192, ¶ 5, 916 N.W.2d 113. Even upon proper showing, original jurisdiction is always discretionary, and the Court determines for itself whether a matter is within its original jurisdiction. *State ex rel. Link v. Olson*, 286 N.W.2d 262, 266 (N.D. 1979).

[¶7] This case presents unresolved questions created by the death of a candidate receiving the plurality of votes cast for a constitutional office. We have consistently recognized that the power of the people to govern themselves through the voting process implicates a public interest. *See Onstad*, 2020 ND 203, ¶ 7; *Berg,* 2020 ND 178, ¶ 8; *Riemers*, 2018 ND 192, ¶ 6; *RECALLND v. Jaeger*, 2010 ND 250, ¶ 7, 792 N.W.2d 511.

[¶8] This case also involves a dispute between the executive and legislative branches of government about which has authority to fill a legislative vacancy. "These issues concern the balance of powers between the legislative and executive branches of government." *N.D. Legislative Assembly v. Burgum*,

---

[1] On November 13, 2020, this Court denied the motion for preliminary injunctive relief.

2018 ND 189, ¶ 10, 916 N.W.2d 83; *see also* The Federalist No. 48 (James Madison). "Because our constitution provides for a separation of legislative, executive, and judicial powers, actions which tend to undermine this separation are of great public concern." *Burgum,* at ¶ 10. Therefore, this case presents justiciable controversies of significant public interest and concern, and we exercise our discretionary jurisdiction.

III

[¶9]   The Governor petitions this Court for a declaration that he has authority to appoint an individual to fill the office Andahl presumably would have filled. He requests a writ of mandamus directing the Secretary of State to issue a certificate of appointment and oath of office to his appointee.

[¶10] We may issue a writ of mandamus to compel a state official to perform an act that the law specifically requires. N.D.C.C. § 32-34-01. "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Onstad*, 2020 ND 203, ¶ 8 (quoting *Berg*, 2020 ND 178, ¶ 9).

[¶11] The Governor argues he has authority to make an appointment in this case under N.D. Const. art. V, § 8, which provides: "The governor may fill a vacancy in any office by appointment if no other method is provided by this constitution or by law." The Governor's authority to make an appointment in this case therefore requires a vacancy in the office of State Representative for District Eight and the absence of a legal method to fill that vacancy.

A

[¶12] The Governor asserts that on December 1, 2020 a vacancy will exist in the office of State Representative for District Eight. The Legislative Assembly and the District Eight Republican Committee agree. The incumbents' terms will expire on that date. *See* N.D. Const. art. IV, §§ 4, 7; N.D.C.C. § 44-02-01(5). The Governor requests a declaration that he has the exclusive authority to make an appointment effective on that occurrence. For us to render a declaration, a present justiciable controversy must exist. *Brandvold v. Lewis*

4

*& Clark Pub. Sch. Dist. No. 161*, 2011 ND 185, ¶ 8, 803 N.W.2d 827 (citing *Ramsey Cnty. Farm Bureau v. Ramsey Cnty.*, 2008 ND 175, ¶ 22, 755 N.W.2d 920). Although the date on which the Governor's appointment would become effective has not yet arrived, the parties agree nothing will prevent the current House members' terms from expiring on November 30, 2020. Therefore, a present controversy exists as to whether the Governor will have authority to appoint on December 1, 2020. Because a declaration by this Court resolves that controversy, we address the question presented.

[¶13] Volochenko intervened and asserts no vacancy exists. She argues the votes cast for Andahl are a nullity and therefore she prevailed in the election. We disagree. Under established law, votes cast for an ineligible candidate are counted and "considered as a protest against the qualified person . . . ." *Woll v. Jensen*, 36 N.D. 250, 162 N.W. 403, 404 (1917). This has been referred to as the American rule. It is based on the "fundamental idea in all republican forms of government that no one can be declared elected and no measure can be declared carried, unless he or it receives a majority or plurality of the legal votes cast in the election." *Casselton Reporter v. The Fargo Forum*, 65 N.D. 681, 261 N.W. 549, 551 (1935). If a candidate does not receive a majority or plurality of the votes cast, he or she cannot be elected. *See Woll*, at 404 ("no right to office can be assumed in the defeated candidate"); *Casselton Reporter*, at 552 (majority of votes cast for ineligible candidate "is effective to prevent the election" of losing candidate).

[¶14] Volochenko argues we should reach a different result based on a line of cases beginning with the Wisconsin Supreme Court's decision in *State ex rel. Bancroft v. Frear*, 128 N.W. 1068 (Wis. 1910). That court said "electors cannot create a vacancy by voting for a man known to be dead when the votes are cast." *Id.* at 1076. It explained "the effect that votes knowingly cast for a candidate who cannot possibly exercise the functions of the office if elected are thrown away . . . ." *Id.* at 1073. According to Volochenko, this rule should apply here and the votes cast for Andahl should not be counted because the electorate had knowledge of his death.

[¶15] It is undisputed that the Republican Party led an informational campaign to notify District Eight voters of Andahl's death and urge them to

still vote for him. Volochenko argues the proper procedure when a candidate dies before the election is to conduct a write-in campaign. We are not persuaded. First, her position conflicts with our precedent. Second, under her argument, when a candidate dies on the eve of an election, the voters could be deprived of a choice if the deadline for certifying a write-in candidate cannot be met. *See* N.D.C.C. § 16.1-12-02.2 (providing write-in candidate certification deadlines). Volochenko has not convinced us to abandon our precedent following the American rule.

[¶16] Here, two seats were up for election. Because two seats were available, Volochenko needed to receive at least the second highest number of votes to be elected. *See* N.D.C.C. § 16.1-01-06 (highest number of votes elects). She did not achieve the status of being the second highest vote recipient, and she was not elected by virtue of being the third highest vote recipient. Therefore as a matter of law, Volochenko's electoral status as the third place finisher does not prevent a vacancy from occurring in the office of State Representative for District Eight.

B

[¶17] "An office becomes vacant if the incumbent shall . . . [f]ail to discharge the duties of office . . . and the office in all cases becomes vacant upon the termination of the term for which the person was elected." N.D.C.C. § 44-02-01(5). The term of office for a member of the Legislative Assembly is four years. N.D. Const. art. IV, § 4. The Legislative Assembly term of office commences on the first day of December. N.D. Const. art IV, § 7. The incumbents' terms in this case expire on the last day of November. On December 1, 2020, Nehring is set to fill one of the seats because he received the most votes. Andahl received the second most votes, and he presumably would have filled the other seat but died and will not do so. Therefore, as a matter of law, a vacancy will exist on December 1, 2020.

[¶18] When a vacancy in office occurs, the Governor's constitutional authority to fill it is contingent upon there being "no other method" provided by law. N.D. Const. art. V, § 8. Section 44-02-03, N.D.C.C., provides that "[a]ny vacancy in a state or district office, *except in the office of a member of the legislative*

6

*assembly*, must be filled by appointment by the governor." (Emphasis added.) The Governor argues this statute does not preclude him from making an appointment to an office of the Legislative Assembly. He reads the statute as making an appointment to the Legislative Assembly a matter of his discretion. His interpretation is unconvincing.

[¶19] We construe statutes dealing with the same subject matter together to harmonize them and give full force to their meaning. *Sabo v. Job Serv. N.D.*, 2019 ND 98, ¶ 11, 925 N.W.2d 437. Under the power vested in the Legislative Assembly by N.D. Const. art. IV, § 11, it has passed N.D.C.C. § 16.1-13-10. That section applies to "a vacancy in the office of a member of the legislative assembly . . . ." Construing N.D.C.C. § 44-02-03, which excepts legislative offices from the Governor's appointment authority, with N.D.C.C. § 16.1-13-10, which provides a method for filling legislative vacancies, the law unambiguously does not grant a governor authority to fill a legislative vacancy.

[¶20] A governor does not have authority to fill a legislative branch vacancy unless the gap-filling authority of N.D. Const. art. V, § 8 permits it. That provision is inapplicable when there is a method provided by law to fill the vacancy. Section 16.1-13-10, N.D.C.C., provides that method. Its provisions provide a procedure for filling "a vacancy in the office of a member of the legislative assembly." The Governor claims this law is inapplicable to the circumstances here because Andahl died and he was never elected. The Governor claims that because Andahl will never become a member of the 67th Legislative Assembly, the vacancy that will exist in this case will not be in the office of a "former member" as required by N.D.C.C § 16.1-13-10.

[¶21] The Governor's position conflates tenure in office with the office itself. "Any vacancy that warrants an appointment must be a vacancy in the office, not in the term." *State ex rel. Foughty v. Friederich*, 108 N.W.2d 681, 690 (N.D. 1961). It is true Andahl will never become a member whose term exists during the 67th Legislative Assembly. But the question is whether there will be a vacancy in the office of State Representative for District Eight, not the office of a member of a specific assembly or term.

7

[¶22] As we have explained, a vacancy will occur in the office of State Representative for District Eight when the incumbents' terms expire on November 30, 2020. At that point they will become "former members" of the Legislative Assembly. Because the vacancy in one of these seats in the office will not be filled by a candidate who was elected and qualifies for the office, the vacancy will persist. The provisions of N.D.C.C. § 16.1-13-10 relating to "a vacancy in the office of a member of the legislative assembly" will apply. Because that law provides a method for filling this vacancy, the Governor's gap-filling authority is not available.

IV

[¶23] We declare a vacancy in office will exist on December 1, 2020, and the Governor does not have statutory or constitutional authority to make an appointment to fill the vacancy in this case. He has not established a clear legal right to performance of the acts he seeks. Therefore, a writ of mandamus is not warranted. We deny the requested relief.

[¶24] We have considered the remaining issues and arguments, and to the extent not already discussed conclude they are either unnecessary to our decision or are without merit.

[¶25] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
William A. Neumann, S.J.

[¶26] The Honorable William A. Neumann, S.J., sitting in place of VandeWalle, J., disqualified.

8