# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2024 ND 135

East Central Water District,                                          Plaintiff

    v.

City of Grand Forks, North Dakota,                              Defendant

    and

William J. Brudvik and Ohnstad Twichell, P.C.,        Third-Party Defendants

### No. 20230389

Certified Questions of Law from the United States District Court for the District of North Dakota, the Honorable Peter D. Welte, Chief Judge.

QUESTIONS ANSWERED.

Opinion of the Court by McEvers, Justice.

Steven M. Harris (argued), Tulsa, OK, Zachary R. Eiken (appeared), Bismarck, ND, and Matthew Dooley (on brief), Sheffield Village, OH, for plaintiff.

Daniel L. Gaustad (argued) and Joseph E. Quinn (on brief), Grand Forks, ND, for defendant.

Bryon G. Ascheman (argued) and Richard J. Thomas (appeared), Arden Hills, MN, for third-party defendants.

**McEvers, Justice.**

[¶1]   Under N.D.R.App.P. 47, the United States District Court for the District of North Dakota has certified two questions, asking whether the language "invalid and unenforceable" in N.D.C.C. § 6-09.4-22(2) means an agreement made without the public lending authority as a party is (1) void *ab initio* or (2) voidable and capable of ratification. We answer the first question "yes," concluding the language "invalid and unenforceable" means void *ab initio,* and answer the second question "no," concluding "invalid and unenforceable" does not mean voidable and capable of ratification.

I

[¶2]   East Central Water District ("East Central") commenced this action against the City of Grand Forks ("City") in the United States District Court for the District of North Dakota. East Central alleged the City unlawfully curtailed East Central's water service area in violation of 7 U.S.C. § 1926(b) and N.D.C.C. § 6-09.4-22. East Central seeks, in relevant part, to declare a water supply and service agreement with the City void *ab initio* under N.D.C.C. § 6-09.4-22(2).

[¶3]   The water supply and service agreement ("Agreement") was entered into in 2000 by Grand Forks-Traill Water Users, Inc. ("GFT"), Agassiz Water Users District ("Agassiz"), and the City to "avoid[ ] conflict in providing potable water" as the City annexed territory in GFT's and Agassiz's service area. East Central is the successor to GFT. Agassiz is not a party to the case. In its statement of relevant facts, the federal district court outlined the Agreement:

> The Agreement addressed the City's "Growth Area," which was territory outside of then-existing city limits "where GFT/Agassiz . . . are supplying water service which may be taken over by the City, and areas where GFT/Agassiz currently have capacity to serve potential customers." The City recognized movement into the growth area would negatively impact GFT's and Agassiz's ability to service their debt. As a remedy, the Agreement established a compensation scheme for potential and existing customers.

(Citations omitted.) The Agreement states it is subject to N.D.C.C. § 6-09.4-22, which requires the public lending authority to be a party to the agreement. At the time of the

Agreement, GFT and Agassiz were indebted to the Bank of North Dakota ("Bank"). The Bank is not a party to the Agreement.

[¶4] After suit was filed, the City answered East Central's complaint and counterclaimed, and brought a third-party complaint against William Brudvik and Ohnstad Twichell, P.C. (together, "Ohnstad Twichell") for legal malpractice in their representation of the City during negotiations and execution of the Agreement if the City is found liable to East Central. East Central answered the counterclaim, and Ohnstad Twichell answered the third-party complaint. The City then moved the federal district court to certify questions to this Court on the interpretation of N.D.C.C. § 6-09.4-22(2). The federal district court granted the motion and issued an order of certification.

II

[¶5] Under N.D.R.App.P. 47(a), this Court may answer questions of law certified to it by a federal court when the questions "may be determinative of the proceeding" and "it appears to the certifying court there is no controlling precedent." "The standard for answering questions certified by a foreign court is less stringent than the standard for answering a question certified by a state district court, which requires the question be determinative." *Dominek v. Equinor Energy L.P.,* 2022 ND 211, ¶ 5, 982 N.W.2d 303; *see also* N.D.R.App.P. 47.1(a)(1)(A). "Unlike cases in state court where the parties have a right to appeal, declining a question certified by a foreign court leaves that court to speculate upon unsettled issues of North Dakota law, and the parties have no recourse in the appellate courts of this State." *Dominek*, at ¶ 5 (cleaned up). Our decision to answer certified questions of law is discretionary. *Blasi v. Bruin E&P Partners, LLC*, 2021 ND 86, ¶ 7, 959 N.W.2d 872.

[¶6] The federal district court determined that there is no controlling precedent by this Court interpreting N.D.C.C. § 6-09.4-22(2). The parties agree the interpretation of N.D.C.C. § 6-09.4-22(2) is a matter of first impression for this Court and there is no controlling precedent. We agree with the federal court and the parties that there is no controlling precedent.

[¶7] The federal district court also concluded that resolution of the questions of law may be determinative of the matter. Specifically, while both 7 U.S.C. § 1926(b) and N.D.C.C. § 6-09.4-22 claims are made, the court noted, "With respect to its federal claims, East Central did not have federal protections under 7 U.S.C. § 1926 until 2015. If the Agreement

2

is not void *ab initio,* it would appear that § 1926's protections would not extend to the City's growth area as described in the Agreement." The City agrees answering these questions of law would be determinative. East Central does not argue that we should not answer the questions of law. We conclude that resolution of these questions may be determinative of the matter, and therefore exercise our discretion to answer the certified questions.

### III

[¶8]   Our rules of statutory interpretation are well established:

> Statutory interpretation is a question of law. *In re Estate of Hogen*, 2015 ND 125, ¶ 12, 863 N.W.2d 876. The primary objective in interpreting statutes is to determine legislative intent, and that intent initially must be sought from the language of the statute. *Id.* Statutory provisions "are to be construed liberally, with a view to effecting its objects and to promoting justice." N.D.C.C. § 1-02-01. Statutory provisions are given their plain, ordinary, and commonly understood meaning, unless they are specifically defined or a contrary intention plainly appears. N.D.C.C. § 1-02-02. Words and phrases are construed according to the context in which they are used and technical words defined by statute must be construed according to the appropriate definition. N.D.C.C. § 1-02-03. Statutes are construed as a whole and harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. Statutes are construed to give effect to all of their provisions so no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4). "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. If the language of a statute is ambiguous or of doubtful meaning, however, a court may resort to extrinsic aids to determine the intention of the legislation, including the object sought to be obtained, the circumstances under which the statute was enacted and the legislative history. N.D.C.C. § 1-02-39. "A statute is ambiguous if it is susceptible to differing but rational meanings." *Western Gas Res., Inc. v. Heitkamp,* 489 N.W.2d 869, 872 (N.D. 1992).

*Mosser v. Denbury Res., Inc.,* 2017 ND 169, ¶ 13, 898 N.W.2d 406.

### IV

[¶9]   East Central argues the Agreement is void *ab initio* under N.D.C.C. § 6-09.4-22, which provides:

3

1. The service provided or made available by a political subdivision through the construction or acquisition of an improvement, or the revenues therefrom, financed in whole or in part with a loan to the political subdivision from the public finance authority or any other state agency or enterprise, may not be curtailed or limited by inclusion of all or any part of the area served by the political subdivision within the boundaries of any other political subdivision, or by the granting of any private franchise for similar service within the area served by the political subdivision, during the term of the loan. The political subdivision providing the service may not be required to obtain or secure any franchise, license, or permit as a condition of continuing to serve the area if it is included within the boundaries of another political subdivision during the term of the loan.

2. Under the circumstances described in subsection 1, nothing prevents the two political subdivisions, with the public finance authority or other state agency or enterprise, from negotiating an agreement for the right or obligation to provide the service in question, **provided that any agreement is invalid and unenforceable unless the public finance authority or other state agency or enterprise is a party to the agreement** and unless the agreement contains adequate safeguards to ensure the security and timely payment of any outstanding bonds of the public finance authority issued to fund the loan.

(Emphasis added.) It is undisputed the Bank is a "public finance authority or other state agency or enterprise" and is not a party to the Agreement. The parties disagree as to what "invalid and unenforceable" means in N.D.C.C. § 6-09.4-22(2). East Central contends "invalid and unenforceable" means void *ab initio*. The City and Ohnstad Twichell argue "invalid and unenforceable" means voidable and therefore capable of ratification. None of the parties argue the statute is ambiguous.

[¶10]  Section 6-09.4-22, N.D.C.C., was enacted in 1997. Black's Law Dictionary at that time defined "Invalid" in relevant part as "not of binding force or legal efficacy; lacking in authority or obligation." *Black's Law Dictionary* 824 (6th ed. 1990). "Unenforceable contract" was defined as "A contract having no legal effect or force in a court action." *Id.* at 1528. Similarly, "Void contract" is "A contract that does not exist at law; a contract having no legal force or binding effect. Expression denotes that the parties to the transaction have gone through the form of making a contract, but that none has been made in law because of lack of some essential element of a contract . . . ." *Id.* at 1574. "Void ab initio" refers to a contract that is "null from the beginning." *Id.* "Voidable contract," on the other hand, means "A contract that is valid, but which may be legally voided at the option

4

of one of the parties. One which is void as to wrongdoer but not void as to wronged party, unless he elects to so treat it." *Id.* "Ratification" is "the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act." *Id.* at 1261. A void contract cannot become valid by ratification. 17A Am. Jur. 2d *Contracts* § 303 (2024).

[¶11]   "Typical instances of voidable contracts are those where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." Restatement (Second) of Contracts § 7 cmt. b (Am. Law Inst. 1981); *see also* N.D.C.C. §§ 9-03-02 ("A consent which is not free is not absolutely void, but may be rescinded by the parties."); 9-03-04 (stating consent is deemed voidable when obtained through duress, menace, fraud, undue influence, or mistake); 9-03-24 ("A contract which is voidable solely for want of due consent may be ratified by a subsequent consent."); *Beare v. Wright*, 103 N.W. 632, 634 (N.D. 1905) (noting fraud "renders a contract voidable for the same reason that mistake, undue influence, duress, etc., have the same effect."). None of the typical voidable instances are at issue in this case. Rather, East Central has alleged the Agreement is void *ab initio* because the public lending authority is not a party to the Agreement as required under N.D.C.C. § 6-09.4-22(2).

[¶12]   The City and Ohnstad Twichell argue the Legislature uses the term "void" when it means void. *See, e.g.,* N.D.C.C. § 9-05-08 ("When a contract provides an exclusive method by which its consideration is to be ascertained, and such method is on its face impossible of execution, the entire contract is void."); N.D.C.C. § 9-08-07 ("Every contract in restraint of the marriage of any person, other than a minor, is void."). The City and Ohnstad Twichell ignore, however, the Legislature's use of the term "voidable." *See, e.g.,* N.D.C.C. § 9-08-08 ("Every settlement or adjustment of any claim for relief for damages on account of any personal injuries received, whether death ensues or not to the person injured, and every contract of retainer or employment to prosecute such an action, is voidable if made within thirty days after the injury . . . ."); N.D.C.C. § 9-14-09(6) ("Failure to make the disclosures required by section 9-14-05 renders any contract subsequently entered into between the customer and the invention developer voidable by the customer."). Because the Legislature has used both "void" and "voidable," this argument is unpersuasive.

[¶13]   The City and Ohnstad Twichell compare "invalid and unenforceable" to "invalid" used in the statute of frauds, N.D.C.C. § 9-06-04, which states certain contracts are "invalid" unless in a signed writing. In *Smestad v. Harris*, 2011 ND 91, ¶ 11, 796 N.W.2d

5

662, we noted "the statute of frauds does not render an oral contract void, but merely makes the contract unenforceable against the promisor." We cited *Guthman v. Moss*, 198 Cal. Rptr. 54, 59 (Cal. Ct. App. 1984), for the proposition that "use of term 'invalid' in statute of frauds means voidable rather than void." *Smestad*, at ¶ 11. The City and Ohnstad Twichell assert the Court should interpret "invalid" in N.D.C.C. § 6-09.4-22(2) to also mean "voidable."

[¶14] In *Smestad*, we further stated, "Consistent with the requirement that the statute of frauds be specifically pled as an affirmative defense, the statute of frauds affects only the remedy on the contract, and to the extent a promisor waives the protection, the contract is enforceable against the promisor." 2011 ND 91, ¶ 11. Unlike the statute of frauds, which is an affirmative defense that may be waived and affects only the remedy on the contract, N.D.C.C. § 6-09.4-22(2)'s requirement that the public lending authority be a party to the agreement cannot be waived by the political subdivisions. As explained below, the parties lack the authority to contract for water services without the public lending authority being a party. A closer equivalent here would be the public lending authority's ability to waive the requirement that it be a party to the agreement. As Ohnstad Twichell acknowledges, "The clear intent of this [ ] provision is to ensure that the public finance authority is satisfied that any contract does not unreasonably impair the rural water district's ability to repay the loan or jeopardize the public finance authority's security for the loan." Instead, the City is effectively arguing it has the ability to waive the public lending authority's protection in N.D.C.C. § 6-09.4-22(2).

[¶15] Further, nothing in *Smestad* opined on the meaning of "invalid and unenforceable." The City urges us to interpret the phrase to mean "invalid, or voidable, and requires a timely and proper election to rescind and invalidate the agreement, before the agreement is then deemed unenforceable." Because the City's interpretation would insert additional language into the statute, providing a different meaning, we reject the City's interpretation. *Sargent Cnty. Water Res. Dist. v. Beck*, 2023 ND 230, ¶ 20, 999 N.W.2d 175 ("The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence."); *Wilkinson v. Bd. of Univ.*, 2020 ND 179, ¶ 34, 947 N.W.2d 910 ("When engaging in statutory interpretation, this Court has consistently recognized that it must be presumed the legislature intended all that it said, said all that it intended to say, and meant what it has plainly expressed.").

[¶16] Florida courts recently considered whether its statutory language "invalid and unenforceable" meant void or voidable. The relevant statute, Fla. Stat. § 627.7152, governs

6

assignment of benefits agreements where a policyholder transfers property insurance benefits to an assignee. The statute states an assignment agreement must abide by several requirements, Fla. Stat. § 627.7152(2)(a)-(b), and "[a]n assignment agreement that does not comply with this subsection is invalid and unenforceable." Fla. Stat. § 627.7152(2)(d). The Florida district courts of appeal concluded that "invalid and unenforceable" as used in this statute means void, not voidable. *Total Care Restoration, LLC v. Citizens Prop. Ins. Corp.*, 357 So. 3d 1260, 1265-66 (Fla. Dist. Ct. App. 2023); *Air Quality Experts Corp. v. Fam. Sec. Ins. Co.*, 351 So. 3d 32, 38 (Fla. Dist. Ct. App. 2022); *Kidwell Grp., LLC v. ASI Preferred Ins. Corp.*, 351 So. 3d 1176, 1179-80 (Fla. Dist. Ct. App. 2022). Citing to Black's Law Dictionary, the Florida district courts of appeal reasoned that the plain meaning of "invalid" and "unenforceable" is different from "voidable." *Kidwell*, 351 So. 3d at 1179 ("The terms 'invalid' and 'unenforceable' are not synonymous with a 'voidable' contract which can be 'affirmed or rejected' at the option of one party.").

> While the definitions of "void" and "invalid" are distinct, they are not substantially different. "Void" means "of no legal effect," while "invalid" means "not legally binding." *Black's Law Dictionary* (11th ed. 2019). Whether the contract is of no legal effect or is not legally binding, it is unenforceable. As we must apply the plain meaning of a statute, the Legislature has precluded the enforcement of an [assignment of benefits contract] which does not include the mandatory statutory requirements.

*Air Quality*, 351 So. 3d at 38; *see also Total Care*, 357 So. 3d at 1266 (adopting reasoning in *Air Quality*). As to the plain meaning of the words "invalid" and "unenforceable," we agree with the Florida district courts of appeal that the terms are synonymous with "void," rather than with "voidable."

[¶17] Under N.D.C.C. § 9-08-01, "Any provision of a contract is unlawful if it is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals." *See also Meyer v. Hawkinson*, 2001 ND 78, ¶¶ 18, 20, 626 N.W.2d 262 (noting that contracts contrary to express law or public policy are unlawful). An unlawful contract is generally void. *Mees v. Grewer*, 245 N.W. 813, 816 (N.D. 1932); *Jarski v. Farmers' & Merchants' State Bank of Hankinson*, 206 N.W. 773, 775-76 (N.D. 1925). East Central argues the Agreement is "contrary to an express provision of law" because a condition precedent—the Bank being a party to the Agreement—was not satisfied. We agree. An agreement without the public finance authority as a party is contrary to N.D.C.C. § 6-09.4-22(2), which is an express provision of law, and therefore unlawful and void.

7

[¶18] The City contends that because GFT/East Central, Agassiz, and the City had the power to enter into a water supply and service agreement, failure to include the Bank as a party was, at most, an irregularity in the exercise of the power to contract. East Central, on the other hand, argues the parties were not capable of contracting under N.D.C.C. § 6-09.4-22(2) because the Bank was not a party.

[¶19] This Court has recognized that if a party has the power to contract, an irregularity in the exercise of that power does not render the agreement void *ab initio. Nw. Sheet & Iron Works v. Sioux Cnty.*, 36 N.W.2d 605, 609 (N.D. 1949); *St. Paul Foundry Co. v. Burnstad School Dist. No. 31*, 269 N.W. 738, 740 (N.D. 1936). Accordingly, when the parties do not have the authority to contract in the first instance, the contract is void and incapable of ratification. *Caterpillar Tractor Co. v. Detman Twp.*, 244 N.W. 876, 879 (N.D. 1932); *Henderson v. Long Creek Sch. Dist. No. 2 of Divide Cnty.*, 171 N.W. 825, 826 (N.D. 1919); *State ex rel. Diebold Safe & Lock Co. v. Getchell*, 55 N.W. 585, 587 (N.D. 1893). For example, "Where an authorization from the electors of the municipal corporation is a condition precedent to a transaction entered into by the governing board for the procurement of property[,] a contract entered into by the board in violation of such statute is absolutely void" and "the governing board cannot ratify such contract." *Nw. Sheet*, 36 N.W.2d at 610; *see also Grand Forks Cnty. v. City of Grand Forks*, 123 N.W.2d 42, 46 (N.D. 1963) ("An agreement is ultra vires only in those cases where the municipality has no power under existing law to make the agreement in the first place."); *Williams v. City of Fargo*, 247 N.W. 46, 53 (N.D. 1933) ("An ultra vires contract is wholly void and no recovery can be had against the municipality thereon.").

[¶20] Because N.D.C.C. § 6-09.4-22(2) prevents political subdivisions from contracting without the public lending authority, the statute concerns their authority to contract. Failure to satisfy the statute amounts to more than a mere irregularity in exercising their power to contract. Although each party may have the general authority to contract, N.D.C.C. § 6-09.4-22(2) imposes specific requirements concerning this subject matter. The public lending authority being a party is an indispensable part of the agreement, without which, the political subdivisions have no authority to contract for water supply and service under N.D.C.C. § 6-09.4-22. Therefore, the statute speaks to the authority to contract on this subject matter, as opposed to the manner or means of exercising one's power to contract.

[¶21] The City argues that an ultra vires defense is unavailable to invalidate an act of a non-profit corporation, which GFT was at the time of contracting, under N.D.C.C. § 10-33-23. Section 10-33-23, N.D.C.C., provides in relevant part, "No act of a corporation and

8

no conveyance or transfer of real or personal property to or by a corporation is invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer . . . ." By its plain language, this provision applies when the corporation specifically is "without capacity or power" to act. Here, any political subdivision is prohibited from contracting under N.D.C.C. § 6-09.4-22 unless the public lending authority is a party to the agreement. Therefore, none of the parties were authorized to contract on this subject matter without the public lending authority being a party to the agreement. In other words, the agreement is not invalid and unenforceable due specifically to GFT's lack of capacity or power to contract. The City and Agassiz were equally unable to contract for water services without the public lending authority being a party to the agreement. We conclude that N.D.C.C. § 10-33-23 is inapplicable in this context and otherwise fails to aid in interpreting N.D.C.C. § 6-09.4-22(2), which is the subject of the certified questions.

[¶22]  We conclude the language "invalid and unenforceable" in N.D.C.C. § 6-09.4-22(2) means an agreement made without the public lending authority as a party is void *ab initio*.

V

[¶23] Our answer to the first certified question is "yes," the language "invalid and unenforceable" means void *ab initio,* and our answer to the second question is "no," it does not mean voidable and capable of ratification.

[¶24]  Jon J. Jensen, C.J.
         Daniel J. Crothers
         Lisa Fair McEvers
         Jerod E. Tufte
         Douglas A. Bahr

9