IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2024 ND 201

Fargo Education Association,                                  Petitioner and Appellant

v.

Fargo Public School District,                                Respondent and Appellee

No. 20240151

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Cherie L. Clark, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Michael J. Geiermann, Bismarck, ND, for petitioner and appellant.

Monte L. Rogneby (argued), Seth A. Thompson (on brief), and Jack M. Buck (on brief), Bismarck, ND, for respondent and appellee.

**Bahr, Justice.**

[¶1]   The Fargo Education Association appeals from a district court judgment denying and dismissing with prejudice the Association's petition for a writ of mandamus. The Association argues the court erred in interpreting N.D.C.C. ch. 15.1-16 and in finding school psychologists and a special education teaching position were not teachers within the negotiating unit. We affirm.

I

[¶2]   The Association is the organization authorized to represent teachers employed by the Fargo Public School District in negotiations with the Board of Education for the Fargo Public School District. The Association and the Board negotiated and entered into agreements governing teachers employed by the District, including agreements governing the 2021-23 and 2023-25 school years. The District's teacher contracts must be consistent with the terms and conditions of the agreements.

[¶3]   The District employs school psychologists. The District historically paid the school psychologists consistent with the wage matrix of the agreements. The District's job description for school psychologists requires school psychologists have the "[a]bility to possess a [v]alid North Dakota Teaching License with North Dakota School Psychologist credential." In July 2023, the District increased the salary of its school psychologists for the 2023-24 school year. The salary increase does not comply with the terms of the agreements.

[¶4]   In April 2023, the District posted an opening for a special education teacher position. Because the District did not receive any applicants by June 14, 2023, the District accepted bids to fill the position and awarded the bid to Full Circle Pediatric Solutions. The District and Full Circle entered into a service agreement in August 2023. The service agreement is "for the purpose of contracting a Special Education Teacher for the 2023-2024 school year." The service agreement states "[s]ervices will be provided to students at the Eagles Elementary and follow the [District] teacher contract." It further provides that

Full Circle is an independent entity under the service agreement and not a District employee. The amount the District pays Full Circle under the service agreement for the special education teacher is more than it may pay a special education teacher under the agreements.

[¶5] The Association filed grievances regarding the District's contracts with the school psychologists and Full Circle; the Fargo Board of Education denied the grievances. In December 2023, the Association filed a petition for a writ of mandamus requesting the district court order the District rescind its contracts with its school psychologists and Full Circle and offer new contracts that comply with the 2023-25 agreement. After holding a hearing, the district court denied and dismissed with prejudice the Association's petition.

II

[¶6] Section 32-34-01, N.D.C.C., allows a district court to issue a writ of mandamus:

> The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is precluded unlawfully by such inferior tribunal, corporation, board, or person.

*See also* N.D. Const. art. VI, § 8 ("The district court shall have authority to issue such writs as are necessary to the proper exercise of its jurisdiction.").

[¶7] "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Nordquist v. Alonge*, 2024 ND 157, ¶ 10, 10 N.W.3d 578 (quoting *Burgum v. Jaeger*, 2020 ND 251, ¶ 10, 951 N.W.2d 380). "The decision to issue a writ of mandamus is left to the sound discretion of the district court." *Id*. (quoting *Kalvoda v. Bismarck Pub. Sch. Dist. #1*, 2011 ND 32, ¶ 20, 794 N.W.2d 454). This Court reviews a district court's denial of a writ of mandamus under the abuse of discretion standard. *Id*.

2

"A district court abuses its discretion if it acts in an arbitrary, unreasonable, or capricious manner, or if it misapplies or misinterprets the law." *Motisi v. Hebron Pub. Sch. Dist.*, 2021 ND 229, ¶ 10, 968 N.W.2d 191 (quoting *Kenmare Educ. Ass'n v. Kenmare Pub. Sch. Dist. No. 28*, 2006 ND 136, ¶ 9, 717 N.W.2d 603).

### III

[¶8]   The Association argues school psychologists are teachers under N.D.C.C. § 15.1-16-01(5) and are subject to the terms of the 2023-25 agreement.

[¶9]   "Statutory interpretation presents a question of law, fully reviewable on appeal." *Fahey v. Cook*, 2024 ND 138, ¶ 22, 9 N.W.3d 668. "Our primary objective in interpreting a statute is to determine the legislation's intent, as expressed in the statutory language." *Id.* "We give words their plain, ordinary, and commonly understood meaning, unless they are specifically defined or contrary intention plainly appears." *Id.*; N.D.C.C. § 1-02-02. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. "If the language of a statute is ambiguous or of doubtful meaning, however, a court may resort to extrinsic aids to determine the intention of the legislation, including the object sought to be obtained, the circumstances under which the statute was enacted and the legislative history." *E. Cent. Water Dist. v. City of Grand Forks*, 2024 ND 135, ¶ 8, 9 N.W.3d 705; *see also* N.D.C.C. § 1-02-39. "A statute is ambiguous if it is susceptible to differing but rational meanings." *E. Cent. Water Dist.*, at ¶ 8 (quoting *Mosser v. Denbury Res., Inc.*, 2017 ND 169, ¶ 13, 898 N.W.2d 406).

[¶10] Chapter 15.1-16, N.D.C.C., provides the process for an organization to become a "representative organization" to represent teachers and administrators in negotiations with the board of a school district. *See* N.D.C.C. § 15.1-16-01(2)-(3); N.D.C.C. § 15.1-16-11. For purposes of chapter 15.1-16, "'Teacher' means a public school employee licensed to teach by the education standards and practices board or approved to teach by the education standards and practices board and employed primarily as a classroom teacher." N.D.C.C. § 15.1-16-01(5). Thus, to be a "teacher" under section 15.1-16-01(5), the individual must be (1) a school employee, (2) licensed or approved to teach by the Education Standards

and Practices Board (ESPB), and (3) "employed primarily as a classroom teacher." It is undisputed the school psychologists are employees of the District. The District argues they are not licensed or approved by the ESPB to teach, and that they are not employed as classroom teachers. The Association argues the school psychologists are licensed to teach by the ESPB and the phrase "employed primarily as a classroom teacher" is ambiguous, and thus the holding in *Hilton v. North Dakota Education Association*, 2002 ND 209, 655 N.W.2d 60, is applicable to this case. The district court concluded the school psychologists are licensed to teach, satisfying the second requirement to be a "teacher" under section 15.1-16-01(5). However, the court further concluded the school psychologists are not "employed primarily as a classroom teacher." We agree with the district court's conclusion the school psychologists are not "teachers" as defined in section 15.1-16-01(5).

[¶11] Acknowledging the school psychologists are licensed by the ESPB, the District argues the school psychologists are not licensed or approved to "teach" by the ESPB. Thus, the District argues, the school psychologists do not meet the second definitional requirement of a teacher. We need not address this issue because, even if the ESPB licenses or approves school psychologists to teach, they are not employed by the District as classroom teachers. The District's position description for school psychologists provides school psychologists' responsibilities are to assess and place students in special education; participate in multi-tiered systems of support for students; and plan, deliver, and participate in professional development for staff. In its manual for completing personnel forms for positions requiring North Dakota teaching licenses, the North Dakota Department of Public Instruction identifies a school psychologist as "[a] staff member performing assigned services of psychological evaluation and analysis of students, cooperating in program development, conducting research, assisting staff members with student problems of a psychological nature, and broadening

4

their understanding of psychological forces." The parties presented no evidence the school psychologists teach in the classroom.[1]

[¶12] *Hilton* does not assist the Association. In *Hilton*, this Court determined whether a counselor was a teacher within the meaning of N.D.C.C. § 15-38.1-02(6) (1969), the definition of "teacher" prior to the enactment of N.D.C.C. § 15.1-16-01(5). 2002 ND 209, ¶ 10; *see also* 2001 N.D. Sess. Laws ch. 181, §§ 4, 21. The former statute provided teachers "means and includes all public school employees . . . employed primarily as classroom teachers." N.D.C.C. § 15-38.1-02(6) (1969). The *Hilton* court explained the term "means" is exhaustive, while the term "includes" is non-exclusive, creating an internal inconsistency within the statute. *Hilton*, at ¶ 12. Concluding the definition of teacher was ambiguous, *Hilton* relied on a 1974 attorney general opinion to interpret the statute. *Id*. at ¶¶ 13-16.

[¶13] The 1974 attorney general opinion explained the purpose of the term "employed primarily as classroom teachers" was to "distinguish the teachers from the administrator." *Hilton*, 2002 ND 209, ¶ 14. "A person who was employed for the purpose of devoting at least fifty percent of his time to the duties of administration would . . . be classified as an administrator even though he had some classroom duties." *Id*. As such, the opinion stated a counselor "would still be considered a teacher . . . for purposes of the negotiation law." *Id*. The *Hilton* court concluded that counselors "who do not devote more than fifty percent of their time to administration duties are teachers for purposes of the teachers' representation and negotiation law." *Id*. at ¶ 18.

[¶14] *Hilton* is distinguishable because the definition of "teacher" in N.D.C.C. § 15.1-16-01(5) is not internally inconsistent like the *Hilton* court found the

---

[1] Because the school psychologists are not employed at all as classroom teachers, we need not address the meaning of "primarily" as used in N.D.C.C. § 15.1-16-01(5). *See* The American Heritage Dictionary 1398 (5th ed. 2018) (defining "primarily" as "Chiefly; mainly"); New Oxford American Dictionary 1386 (3d ed. 2010) (defining "primarily" as "for the most part; mainly"); Merriam-Webster's Collegiate Dictionary 986 (11th ed. 2005) (defining "primarily" as "for the most part: CHIEFLY"); *see also* N.D.C.C. § 15.1-16-01(1) (defining "Administrator" to mean an individual employed by a public school district "primarily for administration . . . and who devotes at least fifty percent of the individual's time in any one year to the duties of administration of the school or schools of the district").

definition in N.D.C.C. § 15-38.1-02(6) (1969) to be. Section 15.1-16-01(5) only uses the term "means," while N.D.C.C. § 15-38.1-02(6) (1969) used the conflicting terms "means and includes." *Hilton*, 2002 ND 209, ¶¶ 9, 12. Because the term "teacher" in section 15.1-16-01(5) is clear and unambiguous, we need not resort to extrinsic aids to determine the legislative intent. *E. Cent. Water Dist.*, 2024 ND 135, ¶ 8.

[¶15] Moreover, we do not find the *Hilton* opinion or the 1974 attorney general opinion persuasive. *Kuntz v. State*, 2019 ND 46, ¶ 29, 923 N.W.2d 513 ("We give respectful attention to the attorney general's opinions and follow them when we find them persuasive."). The *Hilton* court and the attorney general opinion did not interpret the meaning of "teacher." Rather, ignoring the statutory requirement that a teacher be "employed primarily as a classroom teacher," they determined any non-administrator employee was a teacher, irrespective of whether the employee taught primarily in the classroom. However, N.D.C.C. § 15-38.1-02(6) (1969) did not define "teacher" as a non-administrator; it defined teacher to mean "public school employees . . . employed primarily as classroom teachers." We overrule *Hilton* to the extent it holds a licensed school district employee who is not an administrator is a teacher irrespective of the employee's assigned teaching duties.

[¶16] We conclude the district court did not abuse its discretion in denying a writ of mandamus to rescind the school psychologists' contracts.

IV

[¶17] The Association argues the District's service agreement with Full Circle must comply with the 2023-25 agreement because the special education teaching position is part of the negotiating unit under N.D.C.C. § 15.1-16-01.

[¶18] The district court wrote the Association "has not presented any evidence that Full Circle or its special education teacher is a 'public school employee' to be classified as a 'teacher.'" Thus, the court concluded "Full Circle and its special education teacher are not part of the negotiating unit and are not subject to the terms of the negotiated agreement." The court further concluded,

6

[The Association] has not met its burden in establishing a clear legal right to the issuance of a writ to rescind the Full Circle Service Agreement. Full Circle, and its special education teacher, do not fall within the negotiating unit as "teachers." Accordingly, the District is not required to issue a teacher contract in line with the negotiated agreement's terms, and the District did not violate N.D.C.C. ch. 15.1-16 in negotiating directly with Full Circle.

[¶19] The service agreement provides Full Circle is an independent entity, not an employee of the District. The label parties place on a relationship is not determinative of whether the individual is an employee or independent contractor. *State by & through Workforce Safety & Ins. v. Badger Roustabouts, LLC*, 2021 ND 166, ¶ 10, 964 N.W.2d 514; *Matter of BKU Enterprises, Inc.*, 513 N.W.2d 382, 387 (N.D. 1994). How the relationship between the parties actually operates is what is important. *Badger Roustabouts, LLC*, at ¶ 10. "The central question in determining whether an individual is an employee or independent contractor is: Who is in control?" *Myers-Weigel Funeral Home v. Job Ins. Div. of Job Serv. N.D.*, 1998 ND 87, ¶ 9, 578 N.W.2d 125; *see also Matter of BKU Enterprises, Inc.*, 513 N.W.2d at 385 (stating, "the common law test focuses upon the employer's right to direct and control the means and manner of performing the work").

[¶20] The Association did not contest, at the district court or before this Court, that the individual providing services under the service agreement was not an independent contractor. Thus, we need not decide whether the special education teacher provided under the service agreement is an employee or independent contractor. We also need not decide whether a school district can provide teaching services through an independent contractor. *See Ebel v. Engelhart*, 2024 ND 168, ¶ 15, 11 N.W.3d 10 ("Arguments not raised in the district court are not preserved for appeal."); *Trosen v. Trosen*, 2022 ND 216, ¶ 33, 982 N.W.2d 527 ("We do not consider arguments that are not adequately articulated, supported, and briefed.").

[¶21] Under N.D.C.C. § 15.1-16-01(2), a "[n]egotiating unit" includes a "*group of teachers* having common interests, common problems, a common employer, or a history of common representation, which warrants that group being represented

by a single representative organization in negotiations with the board of a school district." (Emphasis added.) As previously noted, the definition of "teacher" includes the requirement the individual be "a public school employee." N.D.C.C. § 15.1-16-01(5). The Association did not argue the special education teacher under the service agreement was an "employee" of the District. Because the special education teacher under the service agreement is not a "teacher" under section 15.1-16-01(5), the special education teacher is not part of the negotiating unit as defined in section 15.1-16-01(2).

[¶22] The Association argues allowing school districts to provide teaching services through independent contractors lets school districts circumvent N.D.C.C. ch. 15.1-16. However, we do not hold school districts may provide teaching services through independent contractors. The Association did not raise that issue at the district court or before this Court. Thus, we do not address it. Furthermore, if the clear and unequivocal definition of "teacher" adopted by the legislature does not fulfill the intent of chapter 15.1-16, it is for the legislature to redefine the term, not this Court. *See Potts v. City of Devils Lake*, 2021 ND 2, ¶ 15, 953 N.W.2d 648 ("We have stated on numerous occasions that public policy is declared by the Legislature's action, and that the Legislature is much better suited than the courts to identify or set public policy in this state."); *Est. of Christeson v. Gilstad*, 2013 ND 50, ¶ 14, 829 N.W.2d 453 ("This Court is not free to amend or clarify the clear language of the statute, and if changes are to be made in the statute, we leave that matter to the legislature, as it is for the legislature to determine policy, not for the courts." (cleaned up)); *Treiber v. Citizens State Bank*, 1999 ND 130, ¶ 17, 598 N.W.2d 96 ("The legislature, not this Court, should weigh the competing policy concerns and decide whether to change the clear statutory language."); *Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, 154 (N.D. 1996) ("We are not free to disregard the letter of the statute under the pretext of pursuing its spirit.").

[¶23] Based on the arguments raised and briefed, we conclude the district court did not abuse its discretion in denying a writ of mandamus to rescind the service agreement.

## V

[¶24] We conclude the district court did not abuse its discretion in denying the Association's petition for writ of mandamus. We affirm the district court's judgment. We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or are without merit.

[¶25] Jon J. Jensen, C.J.
　　　　 Daniel J. Crothers
　　　　 Lisa Fair McEvers
　　　　 Jerod E. Tufte
　　　　 Douglas A. Bahr